COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

ADRIAN TORRES,                                              )

                                                                              )               No.  08-01-00483-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
120th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20010D02752)

                                                                              )

 

 

O
P I N I O N

 

Adrian Torres
appeals his conviction for the offense of burglary of habitation.  Over his plea of not guilty, a jury found
Appellant guilty of the charged offense. 
The trial court assessed punishment at 10 years=
imprisonment in the Institutional Division of the Texas Department of Criminal
Justice.  Appellant raises three issues
on appeal; whether the evidence was (1) legally and (2) factually sufficient to
sustain the conviction, and (3) whether the trial court erred in admitting an
extraneous offense which was more prejudicial to Appellant than of probative
value.  We affirm.








On March 29, 2001,
Jose and Elsa Ortiz received a telephone call around 11 a.m. from the El Paso
Police Department, asking them to come into the station to see if they could
identify property taken from their home in a burglary on March 16, 2001.  Mr. and Mrs. Ortiz then left their house in
separate vehicles to go to the police station. 
Mrs. Ortiz returned home approximately seventy minutes later.  She entered the house and as she opened the
door, she noticed that a sliding glass door within the house was shattered and
she saw broken glass everywhere.  She
heard noises upstairs in the master bedroom, which sounded to her like someone
opening the dresser drawers or the office door. 
Mrs. Ortiz left her house and went out to the street to call emergency
911 on her cell phone.  While she was on
her cell phone, Mrs. Ortiz saw a patrol officer driving by and flagged him
down.  Mrs. Ortiz told the officer that
she thought someone was in her house. 
Mrs. Ortiz did not actually see anyone in the house nor did she see
anyone leave through the front entrance of the house.  The officer entered the house, announced his
presence, and waited for back-up.  Within
minutes several police officers arrived. 
Mrs. Ortiz advised the officers that there were weapons in the house and
they proceeded to secure the house. 
After the officers determined that no one was in the house, they asked
Mrs. Ortiz and her husband, who had by then returned home, to enter the
house and identity what property, if any, was missing.  Mrs. Ortiz testified that a crystal vase, a
crystal egg holder, two Rolex watches, Mont Blanc pens, and a gun were
missing.  She also noticed that several
other items, including a VCR and a laptop computer had been moved.  In addition, police officers found a black
duffel bag belonging to Mr. Ortiz in a concrete drainage ditch behind the back
wall of the Ortiz property.  The police
also found pieces of broken crystal near the bag.  Mrs. Ortiz testified that a previously locked
side entrance door had been pulled open. 
Her husband testified that he, as owner of the house, had not given
consent to anyone to enter his house and take the missing items.  Fingerprints taken at the scene were later
found to have no evidentiary value.








About six months
prior to the March 29 burglary, Mr. and Mrs. Ortiz had a security video camera
installed in their home, which recorded the view from the front of their
property. Whenever Mr. and Mrs. Ortiz left the house, they turned on the
security camera.  On the date in
question, Mrs. Ortiz turned on the security camera when she and her husband
left the house to go to the police station and the security camera remained on
until police officers arrived after the burglary.  The videotape from the security camera was
admitted into evidence at Appellant=s
trial.  The videotape shows the Ortizes leaving their house in separate vehicles.  Approximately thirty minutes later, a man is
seen walking up the driveway to the front door of the Ortiz house.  The man then walks around the side of the
house toward the back, outside the view of the security camera.  The man then walked back to the front door in
view of the camera and then again walks around the side of the house out of
view.  Approximately thirty-five minutes
later, the videotape shows Mrs. Ortiz returning, entering the house, then
leaving, and calling the police.  The
videotape also shows the police arriving and entering the house.  Mr. Ortiz and police officers testified that
a person leaving through the front of the property would have appeared on the
videotape given the scope of the security camera=s
view.  The State argued at trial that
based on witness testimony the only way to exit the property without being
recorded by the security camera, was by jumping over the four to
four-and-a-half foot rock wall surrounding the Ortizes= backyard, which drops down nine to
nine-and-a-half feet into the rear concrete drainage ditch, or by exiting on
the side of the property through shrubbery.








Mr. Ortiz
testified that when he and his wife were leaving the house on Thursday,
March 29, 2001, to go to the police station, he noticed a gentleman
watering trees in front of the adjacent house. 
Though they had never met, Mr. Ortiz assumed that the man, later
identified as Appellant, was his neighbor. 
On the following night, Friday, March 30, 2001, Mr. Ortiz and his family
went out for pizza and when they returned home, Mr. Ortiz retrieved their trash
cans and brought them to the side of the house. 
Mr. Ortiz stated that while he was putting away the trash cans,
Appellant approached him from the side fence. 
Appellant told Mr. Ortiz that someone had stolen an outdoor grill from
Appellant=s
property, remarked on the number of break-ins in the neighborhood, and asked
Mr. Ortiz if he had been robbed.  Mr.
Ortiz testified that Appellant asked him if they had gotten an alarm system put
into the house and Mr. Ortiz told Appellant that they were looking into it.  Mr. Ortiz advised Appellant to find out what
else was missing on his property and to call the police.

On the following
morning, Saturday, March 31, 2001, Mr. Ortiz was leaving his house around 6:30
a.m. when he observed Appellant washing a truck in Appellant=s front yard.  Mr. Ortiz noticed that Appellant was
looking at him as he drove away.  Mr.
Ortiz then drove around the neighborhood and came back home.  He told his wife that it seemed to him that
Appellant was the man on the security camera videotape.  Mr. Ortiz took photographs of Appellant on
that Saturday morning after talking with his wife.  Mr. Ortiz=s
wife took the roll of film and had the photographs developed.  On Monday morning, Mr. and Mrs. Ortiz
contacted Detective Alan Mills who asked them to bring the photographs over to
him.  These photographs were admitted
into evidence at trial.








On Tuesday, April
3, 2001, in the course of canvassing the area as part of their investigation,
Detective Mills and Detective John Hernandez went to Appellant=s house and spoke to Appellant and
Maria Macias.  Detective Hernandez
testified that Appellant gave a false date of birth and stated that he was not
home at the time of the burglary of the Ortiz house.  Appellant also told Detective Hernandez that
he only found out about the burglary when he saw police cars next door when he
arrived home.  The next day, April 4,
2001, Appellant was taken into custody for outstanding traffic warrants and
failure to identify.  None of the Ortizes=
missing property was found in Appellant=s
house when he was taken into custody.  On
June 19, 2001, a grand jury indicted Appellant for the instant offense of
burglary of habitation.

Admissibility
of Extraneous Offense 

In Issue Three,
Appellant asserts that the trial court erred in allowing the State to introduce
evidence that Appellant gave Detective Hernandez a false date of birth as such
evidence was more prejudicial to the Appellant than it was probative.

At trial, the
State sought to introduce the proffered testimony of Detective Hernandez with
respect to the fact that Appellant gave a false date of birth to the detectives
when they spoke with him on April 3, 2001. 
The State argued that this evidence was admissible under Texas Rule of
Evidence 404(b) to show consciousness of guilt. 
Defense counsel objected to the admission of Appellant=s statement and argued that the
prejudicial effect far outweighed its probative value.  Defense counsel also stated that Appellant
gave the wrong birth date because he had outstanding traffic warrants.  The trial court overruled Appellant=s objection.

The trial court
has wide discretion in deciding whether to admit or exclude extraneous offense
evidence under Rule 404(b).  Montgomery
v. State, 810 S.W.2d 372, 390 (Tex.Crim.App. 1990)(Opin. on reh=g). 
As long as the trial court=s
ruling is within the zone of reasonable disagreement, an appellate court will
not disturb that ruling absent a clear abuse of discretion.  See id.

Rule 404(b)
provides:








Evidence of other crimes, wrongs or
acts is not admissible to prove the character of a person in order to show
action in conformity therewith.  It may,
however, be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident, provided that upon timely request by the accused in a
criminal case, reasonable notice is given in advance of trial of intent to introduce
in the State=s
case-in-chief such evidence other than that arising in the same transaction.

 

Tex.R.Evid. 404(b).  The enumerated Rule 404(b) exceptions are
neither mutually exclusive nor collectively exhaustive.  Montgomery, 810
S.W.2d at 377.  In order for an
extraneous offense to be admissible, it must be relevant apart from supporting
an inference of character conformity. 
See id. at 387; Tex.R.Evid. 401. 
While evidence of other wrongs or acts may be relevant for some other
permissible purpose, the evidence may be excluded Aif
its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations
of undue delay, or needless presentation of cumulative evidence.@ 
Tex.R.Evid. 403.

Criminal acts
designed to reduce the likelihood of prosecution, conviction, or incarceration for the instant offense are admissible under
Rule 404(b) to show the defendant=s
consciousness of guilt.  See Ransom v.
State, 920 S.W.2d 288, 299 (Tex.Crim.App.)(Opin. on reh=g), cert. denied, 519 U.S. 1030,
117 S.Ct. 587, 136 L.Ed.2d 516 (1996).  In Felder v. State, the Court of
Criminal Appeals stated that presentation of false identification by a
defendant indicates a Aconsciousness
of guilt@ and an
awareness of a need to conceal one=s
identity from law enforcement officials. 
Felder v. State, 848 S.W.2d 85, 98 (Tex.Crim.App.
1992), cert. denied, 510 U.S. 829, 114 S.Ct.
95, 126 L.Ed.2d 62 (1993).  








In the present
case, defense counsel argued outside the presence of the jury that Appellant
gave a false date of birth to the detectives because Appellant knew he had
outstanding traffic warrants.[1]  Detective Hernandez subsequently testified at
trial that Appellant was arrested for the outstanding traffic warrants as well
as for failure to identify.  Appellant
argues on appeal that allowing Detective Hernandez to testify to the false
identification misled the jury as it may have considered the possibility that
Appellant lied because he knew he was a suspect in the Ortiz burglary, rather
than for the traffic warrants.

It was within the
trial court=s
discretion to determine that the evidence of false identification was relevant
to show Appellant=s
knowledge that a crime had been committed and that he was a likely
suspect.  See Felder, 848 S.W.2d
at 98; Tex.R.Evid. 401. 
There is a presumption that relevant evidence is more probative than
prejudicial.  See Montgomery, 810 S.W.2d at 389. 
Factors employed in balancing the prejudicial and probative value of an
extraneous offense under Rule 403 are:

(1)        how compellingly the extraneous offense
evidence serves to make a fact of consequence more or less probable--a factor
which is related to the strength of the evidence presented by the proponent to
show the defendant in fact committed the extraneous offense;

 

(2)        the potential
the other offense evidence has to impress the jury >in
some irrational but nevertheless indelible way=;

 

(3)        the time the
proponent will need to develop the evidence, during which the jury will be
distracted from consideration of the indicted offense;

 

(4)        the force of
the proponent=s need
for this evidence to prove a fact of consequence, i.e., does the proponent have
other probative evidence available to him to help establish this fact, and is
this fact related to an issue in dispute.

 








Santellan v. State,
939 S.W.2d 155, 169 (Tex.Crim.App. 1997); Montgomery,
810 S.W.2d at 389-90.

In the present
case, the State introduced undisputed evidence the Appellant committed the
extraneous offense.  Proof of Appellant=s false identification tended to make
more probable Appellant=s
knowledge and his consciousness of guilt as to the alleged burglary
offense.  Compared to the primary
offense, the character of the extraneous offense was not such that it would
sway the jury in some irrational, but nevertheless indelible way.  In comparison to the remainder of the case,
the State took a minimal amount of time in developing and presenting evidence
of the extraneous offense.  Given the
circumstantial nature of the evidence in this case, the State had a compelling need
to present the extraneous offense evidence. 
Moreover, Detective Hernandez=s
testimony may well have supported the inference Appellant asserts, i.e. he
concealed his identity to order to avoid his subsequent arrest for outstanding
traffic warrants.  In light of the
factors set out above, we find that the trial court did not abuse its
discretion in concluding that the probative value of the evidence was not
substantially outweighed by any prejudicial effect.  We overrule Issue Three.

Sufficiency
of the Evidence

In Issues One and
Two, Appellant contends that the evidence adduced at trial was legally and
factually insufficient to sustain his conviction for the offense of burglary of
a habitation.

Standard
of Review 








In reviewing the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the judgment to determine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560 (1979); Geesa v.
State, 820 S.W.2d 154, 156-57 (Tex.Crim.App.
1991), overruled on other grounds, Paulson v. State, 28 S.W.3d
570 (Tex.Crim.App. 2000).  The test is the same for both direct and
circumstantial evidence cases.  Geesa, 820 S.W.2d at 161.  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See Adelman v.
State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson
v. State, 819 S.W.2d 839, 843 (Tex.Crim.App.
1991).  Rather, our duty is to determine
if both the explicit and implicit findings of the trier
of fact are rational by viewing all the evidence admitted at trial in the light
most favorable to the verdict.  Adelman, 828 S.W.2d at 421-22.  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. 
Matson, 819 S.W.2d at 843, quoting Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App.
1988).








In reviewing a
factual sufficiency of the evidence challenge, this Court considers all of the
evidence, but does not view it in the light most favorable to the verdict.  Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App.
1996).  Rather, the reviewing
court views the evidence in a neutral light and sets aside the verdict only if
it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  Id.  In conducting a factual sufficiency review,
the reviewing court cannot substitute its conclusions for those of the
jury.  Davila v.
State, 930 S.W.2d 641, 647 (Tex.App.--El Paso
1996, pet. ref=d).  It is not within the province of this Court
to interfere with the jury=s
resolution of conflicting evidence or to pass on the weight or credibility of
the witness=s
testimony.  Id.  Where there is conflicting evidence, the jury=s verdict on such matters is generally
regarded as conclusive.  Id.  The correct standard a reviewing court must
follow to conduct a Clewis factual sufficiency
review of the elements of a criminal offense asks whether a neutral review of
all the evidence, both for and against the finding, demonstrates that the proof
of guilt is so obviously weak as to undermine confidence in the jury=s determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  Johnson v. State, 23
S.W.3d 1, 11 (Tex.Crim.App. 2000).

Burglary
of Habitation

At trial, the
State was required to prove that Appellant (1) entered a habitation (2) without
the effective consent of the owner Jose Ortiz, and (3) attempted to commit or
committed theft.  See Tex.Pen.Code Ann. '
30.02(a)(3)(Vernon 2003).  Appellant concedes that the State established
that a burglary was committed, however he asserts that the State failed to
prove beyond a reasonable doubt that Appellant was the burglar.  Appellant argues that the only evidence
presented by the State connecting Appellant to the burglary is the security
camera videotape.  Appellant asserts that
this evidence, without any additional evidence linking Appellant to the
burglary, is not sufficient to support a conviction.

In a prosecution
for burglary of a habitation, an essential element of the offense is that the
accused entered the habitation, absent an issue involving parties.  Rogers v. State, 929
S.W.2d 103, 107 (Tex.App.--Beaumont 1996, no pet.).  Burglarious entry can be proven through
circumstantial evidence.  Gilbertson v. State, 563 S.W.2d 606, 608 (Tex.Crim.App. [Panel Op.] 1978); Garza
v. State, 841 S.W.2d 19, 21-2 (Tex.App.--Dallas
1992, no pet.).  While mere
presence of an accused at the crime scene will not support a conviction, it is
a circumstance tending to prove guilt which, when combined with other facts,
may suffice.  Thomas
v. State, 645 S.W.2d 798, 800 (Tex.Crim.App.
1983); Mabra v. State, 997 S.W.2d 770,
774 (Tex.App.--Amarillo 1999, pet. ref=d).








Here, there was no direct evidence that Appellant entered the Ortizes= house nor any conclusive
fingerprint evidence connecting Appellant to the burglarious entry.  Furthermore, there is no evidence in the
record that missing property belonging to the Ortizes= was ever found in Appellant=s possession.  Evidence from the security videotape
evidence, however, showed that an individual, who Mr. Ortiz later identified as
the Appellant, approached the front of the Ortiz house and went to the side of
the property twice and that Appellant did not exit from the front of the
property.  The videotape shows that no
one else approached the Ortiz house during the seventy minutes in which the
burglary allegedly occurred.  The jury
could have reasonably inferred from this evidence that Appellant was the
intruder and that he exited the Ortiz house through the back of the
property.  Viewing the evidence most
favorably to the verdict, we conclude that a rational jury could have found the
essential elements of the offense beyond a reasonable doubt.  As such, the evidence was legally sufficient
to support Appellant=s
conviction.

In support of his
factually sufficiency argument, Appellant relies on his assertion that the
videotape evidence was not sufficient to sustain the conviction.  At trial, Appellant presented no evidence to
contradict the State=s
evidence or to explain his presence at the scene of the crime.  We have examined all the evidence
impartially, and giving due deference to the jury=s
verdict, we find that the proof of guilt is not so obviously weak as to
undermine the confidence in the jury=s
determination.  See Jones v. State,
944 S.W.2d 642, 648-49 (Tex.Crim.App. 1996), cert.
denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d
54 (1997).  Accordingly, we find no
manifest injustice has occurred and conclude that the evidence is factually
sufficient.  We have carefully reviewed
the record in the instant case, and in applying the established standards of
review, we find that the evidence is both legally and factually sufficient to
support the conviction.  Issues One and
Two are overruled.








Having overruled
all of the issues on appeal, we affirm the trial court=s
judgment.

 

 

March
27, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
We note that defense counsel=s
argument to the trial judge as to Appellant=s
reason for providing false identification is not independently corroborated by
evidence in the record of the guilt-innocence phase of the trial now before us.