# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00635-CR

**James William Thompson, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
NO. D-1-DC-2005-200390, HONORABLE FRED A. MOORE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted James Thompson of burglary of a building and assessed punishment at two years in prison. On appeal, Thompson contends that the evidence is legally and factually insufficient to support the conviction. He also contends that the trial court erred by admitting evidence of his custodial statements, by denying his requested charge on the voluntariness of those custodial statements pursuant to articles 38.22 and 38.23 of the code of criminal procedure, and by denying his requested charge on the lesser included offense of criminal trespass. We affirm.

Pat Madden, the manager of a 7-11 convenience store located at the intersection of 10th Street and Lamar Boulevard in Austin, testified that at approximately 6:32 a.m. on the morning of January 24, 2005, Thompson entered his store wearing dark clothing and gloves. According to Madden, Thompson placed two doughnuts in a brown paper 7-11 bag and paid for them at the

register.  Approximately thirty minutes after this transaction, a burglar alarm was activated at the Khazana, a home furnishing store located on Lamar Boulevard one block away from the 7-11.

Austin Police Officer Kevin Kelly responded to the alarm at the Khazana at around 7:04 a.m.  He testified that the rear door of the building had been pried open and that a cash register, which had also been pried open, was lying on the ground outside the door.  While waiting for backup to arrive, Officer Kelly heard footsteps moving away from him in the shrubbery behind the store.  At this point, Officer Gregory Gentry arrived at the scene and demanded that the person hidden in the shrubbery come out with his hands up.  Thompson emerged, claiming that he had been in the shrubbery in order to relieve himself.  Officer Thomas Hugonnett, who had also arrived at the scene, handcuffed Thompson and, in the course of a search for weapons, found a crowbar in Thompson's pocket.  According to Officer Christopher Gipson, a later, additional search of Thompson revealed "a couple" of twenty dollar bills and a glove in Thompson's pocket.  A screwdriver and a 7-11 bag containing two doughnuts were found on the ground next to the cash register.

Thompson was taken to a police van parked in front of the store for a videotaped interview.  Officer Kelly testified that, prior to the interview, he administered the requisite *Miranda* warnings to Thompson and that Thompson knowingly and intentionally waived his rights.  He stated that Thompson did not sign the card acknowledging receipt of his *Miranda* rights because he was handcuffed.  When Officer Kelly asked Thompson about his whereabouts prior to the burglary, Thompson claimed that he had traveled from his home in south Austin to downtown, where he was planning to catch a bus that would take him south to a job site at the intersection of Manchaca and

2

Stassney. Thompson also told the officers that he had seen "two Hispanic men" near the Khazana earlier that morning.

Thompson was indicted for burglary of a building. *See* Tex. Penal Code Ann. § 30.02 (West 2003). The indictment contained four prior convictions relating to burglary. Thompson filed a motion to suppress evidence of his statements to the police officers during the videotaped interview, arguing in his motion that "[a]ny statements, written or oral, of the defendant, were obtained in violation of Defendant's rights as guaranteed by . . . Article[s] 1.05, 38.21, 38.22, and 38.23 of the Texas Code of Criminal Procedure." The trial court denied his motion. The State brought Thompson to trial before a jury on his plea of not guilty. The State presented nine witnesses and numerous exhibits, including the videotape from the police van showing the interview with Thompson and photographs of the crime scene. Thompson did not testify. The jury returned a guilty verdict and sentenced Thompson to two years in prison.

In his first issue on appeal, Thompson contends that the evidence is legally insufficient to support his conviction. In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (*citing Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). In a legal sufficiency review, we assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981) (*citing Jackson*, 443 U.S. at 318-19).

3

A person commits burglary of a building if, without the effective consent of the owner, he enters a building (or any portion of a building) not then open to the public, and commits or attempts to commit a felony, theft, or assault. Tex. Penal Code Ann. § 30.02(a)(3). Entry of a building without consent for the purpose of burglary can be proven solely through circumstantial evidence. *Gilbertson v. State*, 563 S.W.2d 606, 608 (Tex. Crim. App. 1978); *Tabor v. State*, 88 S.W.3d 783, 786-87 (Tex. App.—Tyler 2002, no pet.).

The record contains direct evidence in the form of testimony from Oam Parkash, the owner of the Khazana, that Thompson did not have his effective consent to enter the building and that the building was not open to the public. In addition to this direct evidence, the record contains circumstantial evidence of Thompson's entry and commission of theft. Officer Kelly testified that he discovered Thompson in the shrubbery outside of the Khazana minutes after the security alarm had been activated, and Officer Hugonnett testified that he found a crowbar in Thompson's pocket. The photographs of the crime scene submitted to the jury showed that the back door of the Khazana had been pried open and that a cash register had been removed from the store and pried open with a screwdriver. Officer Gentry testified that Thompson stated that the screwdriver found near the cash register belonged to him and was for his work. Photographs submitted to the jury also depicted a bag of doughnuts, identical to the one that Thompson had purchased at the 7-11 across the street approximately thirty minutes before the burglary, underneath the cash register. Parkash testified that there was approximately $40 in the cash register on the morning of the crime, and Officer Gipson testified that during his search of Thompson he found "a couple" of twenty-dollar bills in Thompson's pocket separate from the rest of his billfold.

4

On this record, viewing both the direct and circumstantial evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Thompson burglarized the Khazana. Therefore, the evidence is legally sufficient to support Thompson's conviction.

In his second issue, Thompson contends that the evidence is factually insufficient to support his conviction. In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 415. We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* at 417.

In light of the evidence discussed in Thompson's challenge to the legal sufficiency of the evidence, it cannot be said that the "great weight and preponderance of the evidence" contradicts the jury's verdict. *Id.* Although Thompson supplies several "reasonable explanations" for his presence in the shrubbery outside the Khazana with a crowbar and two twenty-dollar bills in his pockets, the jury did not believe these explanations. Instead, the jury concluded by its verdict that Thompson broke into the Khazana and stole money from the cash register. Viewing the evidence in a neutral light and bearing in mind that the fact finder makes credibility determinations, the jury was justified in finding Thompson guilty beyond a reasonable doubt. We conclude that the

5

evidence supporting the verdict is not so weak that the verdict is clearly wrong and manifestly unjust or against the great weight and preponderance of the conflicting evidence. Thus, the evidence is factually sufficient to support the jury's verdict.

In his third issue, Thompson contends that his statements to the police during the videotaped interview should have been suppressed because those statements were obtained in violation of article 38.22 of the code of criminal procedure. Under article 38.22, no oral statement made by an accused during a custodial interrogation is admissible against him unless an electronic recording is made of the statement and prior to making the statements, the accused received a warning that: (1) he has the right to remain silent and that any statement he makes may be used against him at trial, (2) any statement he makes may be used as evidence against him in court, (3) he has the right to have a lawyer present during the questioning, (4) he has the right to a court appointed lawyer if he cannot afford a lawyer, and (5) he has the right to terminate the interview at any time, and the accused prior to making the statement knowingly and voluntarily waived the rights set out in the warning. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005).

In reviewing a motion to suppress, an appellate court "should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *see also State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). This same level of deference applies to trial court's rulings on "'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Guzman*, 955 S.W.2d at 89.

6

An appellate court may conduct a de novo review where the resolution of mixed questions of law and fact does not turn on an evaluation of credibility and demeanor. *Id.* The court of criminal appeals has held that "the deferential standard of review in *Guzman* applies to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing." *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006).

In this case, the videotape of Thompson's custodial statements, which was viewed by the trial judge at the suppression hearing, shows Officer Kelly reading Thompson his *Miranda* warnings from a card and Thompson indicating his understanding of each warning. It then shows Thompson begin to speak with the officers immediately after indicating he understood each *Miranda* warning. Additionally, Officer Kelly testified at the suppression hearing that he read Thompson his *Miranda* warnings and that Thompson knowingly, intelligently, and voluntarily waived those rights prior to the videotaped interview. Officer Kelly explained that "[Thompson] began talking right after I got done [reading the *Miranda* rights] before I could even ask him if he wanted to talk." In light of Officer Kelly's testimony and the deference we must afford the trial court's determination of historical facts based on a videotape recording admitted into evidence at a suppression hearing, we conclude that the trial court did not abuse its discretion by denying Thompson's motion to suppress.

In his fourth issue, Thompson contends that the trial court erred by refusing his request to instruct the jury on the voluntariness of his videotaped statements pursuant to articles 38.22 and 38.23 of the code of criminal procedure. Review of alleged jury charge error requires that

an appellate court make a two-fold inquiry: (1) whether error exists in the jury charge, and (2) whether sufficient harm was caused by the error to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).

Under the Texas Code of Criminal Procedure, if the evidence raises a fact issue about the voluntariness of a statement, the jury shall be instructed not to consider that evidence if the jury believes or has a reasonable doubt the evidence was obtained in violation of the law. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005); *see also Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005). A fact issue about whether evidence was legally obtained may be raised "from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004). If there is no factual dispute over how the evidence was obtained, the instruction is not necessary. *Id.*

Here, Officer Kelly testified that he read Thompson his *Miranda* warnings and that Thompson knowingly, intelligently, and voluntarily waived his rights. The videotape of Thompson's custodial statements played for the jury at trial is consistent with Officer Kelly's testimony. It shows Officer Kelly read Thompson his *Miranda* warnings and Thompson indicate his understanding of each warning. Additionally, the videotape shows Thompson began speaking to the officers immediately after receiving the warnings without any coercion or prompting from the officers. The only suggestion that there was a fact issue with regard to voluntariness occurred at the charge conference when the trial judge asked defense counsel if there were fact issues with regard to articles 38.22 and 38.23. Defense counsel replied:

8

> I feel like looking at the—insofar as Mr. Thompson's statements, I think that the officers—the overall conduct of the officers compelled Mr.—compelling him to make statements because of their demeanor, screaming at him and calling him a liar and the way they treated him out there on the street to be conducive to making a person make a coerced statement of something they accused him. So that's my argument on that. Not that they didn't warn him or anything, but they certainly, I thought, went outside the limits of appropriate interrogation techniques that would be conducive to coerce a person in Mr. Thompson's shoes to make a statement of something for fear what they might do to him.

Other than this argument (which is not evidence), there is nothing in the record contradicting Officer Kelly's testimony or the videotape showing Thompson waiving his rights and voluntarily speaking with the officers. Consequently, we find no fact issue on voluntariness for the jury's consideration and, therefore, conclude that the trial court did not err in failing to instruct the jury on that issue. *See Garza*, 126 S.W.3d at 86-87 (finding appellant raised no fact issue to require article 38.23 jury instruction when appellant's testimony did not differ significantly from that of police officers and that "vague suggestions" or "mere insinuations" by defense counsel that a fact exists do not create a fact issue); *see also Manor v. State*, No. 12-05-00387-CR, 2006 Tex. App. LEXIS 7155, at * 11-12 (Tex. App.—Houston [14th Dist.] Aug. 15, 2006, pet. ref'd) (finding no fact issue to require instruction on voluntariness because "[t]here is no evidence contradicting Officer Delgado's testimony that appellant knowingly, intelligently, and voluntarily waived his rights").

In his fifth and final issue, Thompson contends that the trial court erred by refusing his requested charge on the lesser included offense of criminal trespass. A charge on a lesser included offense must be given if (1) the lesser included offense is included within the proof necessary to establish the charged offense, and (2) there is some evidence in the record that would

9

permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); *see* Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006). We review the trial court's decision for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004).

Thompson argues that criminal trespass is a lesser included offense of burglary of a building and that evidence of his presence in a fenced-off area marked with a "Keep Out" sign behind the Khazana supports a finding that he was guilty only of criminal trespass. At trial, however, Thompson's request for an instruction on criminal trespass did not specify whether the instruction was for criminal trespass *of a building* or criminal trespass *of property*. This distinction is important because while criminal trespass of a building is a lesser included offense of burglary of a building, criminal trespass of property is not. *Black v. State*, 183 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). In *Black*, the court explained:

> the Legislature's use of the word "building" as opposed to "property" in the criminal code is not meaningless. The legislature did not intend for trespass of property surrounding a building to be a lesser-included offense of burglary of a building because the term "building" encompasses only the structure, not the surrounding property. Thus, because an element of burglary of a building does not include the same entry element of the lesser offense of criminal trespass of property, the latter cannot be a lesser-included offense of the former.

*Id.* (citations omitted). In this case, the evidence Thompson relied upon to support the argument that he was entitled to the requested instruction related only to his presence on the property behind the

10

Khazana and did not relate to his entry into or presence inside the Khazana. Thus, we presume that Thompson requested an instruction on the lesser included offense of criminal trespass of property.

As explained above, criminal trespass of property is not included within the proof necessary to establish the offense of burglary of a building. *Id.* Thus, Thompson does not meet the first prong of the test for when a lesser included offense instruction is required, and it is not necessary to consider the second prong of the test. *Rousseau*, 855 S.W.2d at 672-73; *see* Tex. Code Crim. Proc. Ann. art. 37.09. We conclude that the trial court did not err by refusing Thompson's request for an instruction on the lesser included offense of criminal trespass of property.

Affirmed.


_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: May 24, 2007

Do Not Publish

11