**Allen Louis GILBERTSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54124.**

Court of Criminal Appeals of Texas,
Panel No. 3.

March 29, 1978.

Frank Steelman, Bryan, for appellant.

W. T. McDonald, Jr., Dist. Atty., J. Bradley Smith, Asst. Dist. Atty., Bryan, for the State.

Before ROBERTS, PHILLIPS and VOLLERS, JJ.

OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for the offense of burglary of a building. V.T.C.A., Penal Code, Sec. 30.02(a)(1). Punishment was assessed at five years' imprisonment.

The evidence at trial revealed that on May 31, 1974, the Bailey Pharmacy on Villa Maria Street in Bryan was burglarized. The owner, William Bailey, testified that a typewriter, adding machine, and various drugs were taken in the burglary. On cross-examination, Bailey stated that he did not have a shotgun or a stereo component set in his pharmacy.

Officer Elvin Walker testified that in the process of investigating the burglary he took appellant's statement on August 7,

1974. Prior to taking the statement, Officer Walker gave appellant a *Miranda* warning and asked appellant if he wanted an attorney. The appellant stated that he did not want an attorney and voluntarily gave a statement. After the statement was typed, the appellant read it and signed it. The following is a verbatim rendition of appellant's statement:

"About the first of May or the latter part of April 1974 my wife, Nancy and one child and I were traveling west on 25th Street in my fathers truck (1965 chevrolet, ½ ton, green in color) when he saw a hitchhicker. We stopped and picked the black male hitchhicker up, and he told us where he lived. We carried him to a house on S. Randolph St. The house was located on the right at the end of Randolph Street. Upon our arrival the black male who is known to me as Bardie ask us out. We got out and went inside and talked awhile. Then we got ready to go and I told Bardie that we would coming back from Huntsville next week-end and he ask us to drop by. (appellant's initials)

"About 2 or 3 weeks later my wife and I went back by Bardie's house on Randolph Street and we got out and went inside. We were there for about 1 hour and a half and someone knocked on Bardie's front door. Bardie answered the door and he went outside with the person at the door. About 5 minutes later Bardie came back inside the house and ask me if I could take them some place in the truck. I told them yes. I walked outside and got into my truck, Bardie and a white male that Bardie introduced to me as Greg Lear got into the truck. I drove off and Bardie ask me if I knew where Cavitt Street was located and I told him yes. I drove down Cavitt Street behind the Community Cablevision place and Bardie told me to stop. I stopped the truck and Greg got some tools out of the back that he had already put in there before I left. Bardie and Greg told me to wait for them and I waited. About 20 minutes Bardie and Greg returned to the truck with a laundry bag full of something and they put it in the back of the truck. They got in and we drove back to the house. Upon our arrival we got out and Greg carried the bag into the house. Once inside Greg opened the bag up and the bag contained screwdriver, crowbar, some pills, and lots of small square gold pieces, the gold pieces were in small plastic envelopes. That night Greg and Bardie divided the items up and Bardie gave me about 50 pieces of gold. I spent the night with my wife at Bardie's house and the next morning I gave him the gold back. Greg left after they divided the merchandise up. (appellant's initials)

"That same night about 12:00 midnight Greg Lear was kind of excited after they divided the items and he called Bardie outside. He and Bardie talked for awhile outside and they came back inside, then they ask me to give them another ride over by the hospital. Greg Lear, Bardie and I walked outside and got into my truck then we drove pass the new St. Joseph Hospital and Greg ask me to stop by the Floral Center. I stopped the truck and they got out. I drove down the road about a block and I came back and parked behind the Floral Center and another building. I waited about 3 minutes and Greg and Bardie came back to the truck and they told me to drive over there by the doctor's office. I drove the truck to the doctors office by some weeds and they said stop. I stopped the truck and Greg and Bardie got out and loaded a large stereo component set, adding machine, typewriter and a shotgun into the back of the truck. Then we drove back to the house. Upon our arrival, we carried the stuff into the house. Then Greg left. My wife and I spent the night. The next morning Greg came back over and picked up all the items and told Bardie he was going to take the stuff to Houston. (appellant's initials)

"About a month and a half ago around 4:00 P.M. on a Sunday, Greg Lear was given me a ride over to a friends house and we were traveling on E. 29th Street by the new shopping window. Greg

pulled in and parked in front a jewelry store, he got out and walked up to the jewelry store display window, then he called me over to the window and said look here 'Man I bet I could get rid of the rings and stuff in Philadelphia in a minute.' We both got back in the car and left. Then Greg carried me over to my friends house and left." (appellant's initials)

Walker stated that he had had a discussion with Marion Jones, "Bardie," concerning the burglary and Jones had implicated the appellant and Lear. On cross-examination, it was pointed out that the statement by appellant indicates the activities described therein were, at the latest, conducted in the third week of May. The statement does not mention "Bailey's Pharmacy."

The appellant testified on his own behalf that during the month of May 1974 his father's truck was in the repair shop and he had no transportation. As a result of this appellant stated that he did not go to Bryan at any time during the month of May. He further testified that the statement given to Officer Walker was not voluntary and he demanded an attorney on several occasions. Appellant's wife, Nancy Gilbertson, corroborated appellant's statement and testified that she and her husband were in Huntsville on May 30 and 31.

On rebuttal, the State introduced the testimony of Roland Searcy in order to establish the voluntariness of appellant's statement. Searcy testified that on August 6, 1974, at the time of appellant's arrest, he was taken before Judge Dewey and given a magistrate's warning. At that time, appellant gave no indication that he desired an attorney.

■ In his first ground of error, appellant contends that the trial court erred in failing to grant his motion for instructed verdict based on insufficient evidence. The State relies on the appellant's voluntary statement and the fact it reveals that pills, a typewriter, and an adding machine were some of numerous items stolen. Further, the owner of the pharmacy testified that a number of drugs, a typewriter, and an add-

ing machine were missing. The State argues that burglarious entry may be shown by circumstantial evidence. *Morgan v. State,* Tex.Cr.App., 503 S.W.2d 770; *Jones v. State,* Tex.Cr.App., 458 S.W.2d 89. While we agree with the State's statement of the law, we conclude that the evidence was insufficient to show appellant's connection with the offense alleged.

At the outset, we note that the statement made by appellant is the sole evidence used by the State to connect him with the burglary. While the statement does indicate several nefarious activities on the part of the appellant, we cannot say it is sufficient to indicate his connection with the burglary of Bailey's Pharmacy. The statement does not mention "Bailey's Pharmacy" nor does it indicate that Bailey's Pharmacy was anywhere near the locations mentioned in the statement. Further, there was no testimony showing that the pharmacy was at or near the location of the activities described in the statement.

There was no witness to the burglary. The statement was the only evidence that appellant was in Bryan in May 1974. The statement is not precise about the exact dates appellant was involved in the various activities; however, it does indicate that the latest date appellant was in Bryan was the third week in May. There was positive direct and uncontroverted evidence from appellant and his wife that they were both in Huntsville on May 30 and 31, 1974.

The only evidence that even remotely implicates the appellant in the burglary is the testimony of the owner, William Bailey, who described certain items taken. Similar items were described in appellant's statement. However, no property taken in the burglary was found in appellant's possession, nor was there evidence that such property was found in the possession of Marion Jones, "Bardie," or Greg Lear.

Jones and Lear did not testify at trial. There was no evidence to show either Jones, Lear or the appellant physically entered Bailey's Pharmacy in any way. No fingerprints were taken.

In *Morgan v. State,* supra, relied upon by the State, the defendant was found running from the burglarized store four minutes after a burglar alarm signified entry. After being pursued and arrested by the police, several stolen articles were found along the path of the defendant's flight and one item was found near the point where the defendant was arrested. In the instant case, however, there was no showing appellant was in Bryan the night of the burglary and no stolen property was found near or in the possession of appellant.

In *Jones v. State,* supra, an adding machine was stolen and it was established that the defendant had possession of and later sold the same machine. In the present case, no stolen property was connected to the appellant.

In *Greer v. State,* Tex.Cr.App., 437 S.W.2d 558, we cited 24 Tex.Jur.2d, Evidence, as follows:

"In criminal cases, a conviction may properly be had on circumstantial evidence alone. Indeed, circumstantial evidence is frequently just as convincing in a criminal case as direct evidence. To sustain a conviction on circumstantial evidence, however, the basic facts from which it is sought to infer the ultimate fact of guilt must be proved beyond a reasonable doubt by direct evidence. The basic facts must also be consistent not only with each other, but also with the ultimate fact of guilt sought to be inferred from the basic facts. In short, the circumstances relied on, when considered as a whole, must be of a conclusive nature; they must lead to a satisfactory conclusion that the accused is guilty and exclude all other reasonable hypothesis except guilt. They must produce, in net effect, a reasonable and moral certainty that the accused and no other person committed the offense charged. 24 Tex. Jur.2d, Evidence, Sec. 729, p. 403.

"In criminal cases, a judgment of conviction, to be sustained on appeal must be supported by evidence that produces a moral certainty of the guilt of the accused to the exclusion of every reasonable doubt. The evidence will be insufficient to sustain the conviction where, although not leaving the accused free from suspicion of guilt, it still fails to show his guilt to a moral certainty, so as to exclude all reasonable doubt.

"*In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him.* Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material evidence of the offense charged. 24 Tex.Jur.2d, Evidence, Sec. 742, p. 422." (Emphasis added)

While appellant's statement may possibly indicate some criminal activity, we cannot conclude that the evidence is sufficient to sustain a conviction for the offense alleged. Appellant was not in possession of any property taken in the burglary. There was no showing he was in Bryan the night of the burglary. Further, even if we assume appellant's statement refers to activities on May 30 and 31, there is no evidence those activities occurred at a location close to Bailey's Pharmacy. We therefore hold the evidence insufficient to support the conviction. *Greer v. State,* supra; *Donovan v. State,* Tex.Cr.App., 539 S.W.2d 884; *Moreland v. State,* 126 Tex.Cr.R. 367, 72 S.W.2d 273.

For the reasons stated herein, the judgment is reversed and cause remanded.