NUMBER 13-02-620-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS CHRISTI - EDINBURG  

 

HUGO HERNANDEZ,                                                                      Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                 Appellee.

 

On appeal from the 107th District Court of Cameron County, Texas.

 

                                        O
P I N I O N

 

                       Before
Justices Yañez, Rodriguez, and Garza

                                        Opinion
by Justice Yañez

 








On January 1, 2002, appellant, Hugo Hernandez, was
indicted on six counts of burglary of a building.[1]  After a jury trial, he was convicted on
counts one, three, four, five, and six. 
Enhanced by two prior burglary convictions, the jury assessed his
punishment at ten years= imprisonment for each conviction, to be served
concurrently.  The record contains the
trial court=s certification that this is not a plea-bargain case
and the defendant has the right of appeal.[2]

In three issues, appellant contends (1)  the trial court erred in denying his motion
to suppress, (2) the evidence is legally and factually insufficient to support
his convictions for burglary,[3]
and (3) the trial court improperly allowed the State to reopen evidence during
the punishment phase of trial.  We affirm
in part and reverse and remand in part.

 Factual
Background








After burglaries of several small businesses in
Cameron County in mid-to-late 2001, the Brownsville Police Department initiated
an investigation.  After investigation of
several crime scenes, police suspected that the burglaries may have been
committed by the same individual.  During
their investigation, police received a tip from a crime-stopper=s hotline that appellant may have been involved in
the burglaries.  On April 18, 2001,
police arrested appellant for violation of Aseveral
traffic laws.@  During
appellant=s processing at the police department for the
traffic violations, without reading appellant his rights, police informed him
of the tip they had received, and asked appellant whether he would allow them
to photograph him.  After appellant
allegedly agreed, police took several photographs of him, and released him
shortly thereafter.  After more
burglaries occurred, police decided to visit appellant again on September 21,
2001, while he was at a friend=s residence. 
During their visit, police approached appellant as he entered the front
door of the residence and asked him whether he would allow them to take
additional photographs of him.  Appellant
allegedly consented and police took several more photographs.  After further investigation, police
determined that appellant had committed the burglaries and arrested him shortly
thereafter.

Motion to Suppress

In appellant=s first issue, he contends the trial court improperly
denied his motion to suppress the photographs because they were obtained as a
result of an illegal search and seizure in violation of the United States and
Texas Constitutions.[4]


Standard of Review








  The
appropriate standard for reviewing a trial court's ruling on a motion to
suppress is a bifurcated standard of review, giving almost total deference to
the trial court's determination of historical facts and reviewing de novo the
trial court's application of the law.[5]  The trial court is the sole trier of fact and
judge of the weight and credibility of the evidence.[6]  We must afford almost total deference to the
trial court's determination of historical facts supported by the record and its
rulings on application of law to fact questions, or "mixed" questions
of law, when those fact findings involve an evaluation of the credibility and
demeanor of witnesses.[7]  When, as here, the trial court does not make
explicit findings of fact, we view the evidence in the light most favorable to
the trial court's ruling and assume the trial court made implicit findings of
fact that support its ruling so long as those findings are supported by the
record.[8]  If the decision is correct under any theory
of law applicable to the case, the ruling will be sustained.[9]

Applicable Law

The Fourth Amendment of the United States
Constitution and Article I, section 9 of the Texas Constitution forbid
unreasonable searches and seizures.[10]  Article 38.23 of the Texas Code of Criminal
Procedure prohibits the admission of evidence obtained in violation of state or
federal laws or constitutions against an accused at the trial of any criminal
case.[11]  However, constitutional prohibitions against
warrantless searches and seizures do not come into play when a person gives
free and voluntary consent to a search.[12]  Voluntary consent to a warrantless search
violates neither the United States or Texas Constitutions, nor the laws of
Texas.[13]        

Relevant Facts

Immediately prior to trial, appellant=s trial counsel agreed that a previously-filed  motion to suppress concerning the photographs
would be carried through to trial.  At
trial, during direct examination of Officer Jesus Vallejo, who participated in
the investigation of the burglaries, the State requested that the trial court
admit into evidence the photographs of appellant taken on both occasions to
support its theory that appellant had committed the burglaries.  








The photographs show appellant in various
poses.  Some show appellant wearing a
shirt, and others show appellant=s arms, hands, and shirtless upper-body.  The photos are substantially similar in that
they show several abrasions, cuts, and scratches on appellant=s limbs and upper-body.  The State sought to show that appellant=s upper body had numerous abrasions, cuts, and
scratches, consistent with injuries a burglar would have sustained climbing
over walls and crawling through broken windows and holes in walls.  

When the State requested admission of the
photographs, appellant=s trial counsel moved to suppress them and objected
to their admission.  After a voir dire
examination of Officer Vallejo, who admitted to participation in the
photography sessions, trial counsel argued that the photographs should be
suppressed because police knew appellant was the main suspect in the burglary
investigation and chose to Aviolate his rights@ by
photographing him.  The court, without
stating its reasons, overruled trial counsel=s
suppression motion and objection, and admitted all the photographs into
evidence. 

Analysis








Officer Vallejo=s uncontroverted testimony was that on both
occasions, police asked for appellant=s consent to be photographed.  He further testified that appellant
voluntarily consented to the police requests on both occasions.  After hearing Officer Vallejo=s testimony, the trial court could have determined
appellant voluntarily consented to the police requests and that his
constitutional rights were not violated.[14]  Based on Officer Vallejo=s uncontroverted testimony[15]
and in deference to the trial court=s ruling, we conclude the trial court=s admission of the photographs was proper.[16]  Accordingly, appellant=s first issue is overruled.

Sufficiency of the Evidence

In his second issue, appellant challenges the legal
and factual sufficiency of the elements of identity, entry, and intent,
regarding his burglary convictions.[17]  We address these challenges in turn.

Applicable Law








Section 30.02 of the Texas Penal Code lists three
"distinct ways" a burglary may be committed.[18]  If a defendant is charged with burglary under
subsections (a)(1) or (a)(2), the State is required to prove the defendant's
intent to commit a felony or theft at the time the defendant entered or
remained concealed in a habitation or building.[19]  However, when a defendant is charged under
subsection (a)(3), the State is not required to prove that the defendant
intended to commit the felony or theft at the time of entry.[20]  Alternate pleading of the differing methods
of committing one offense may be charged in one indictment.[21]  The conviction will be upheld if the evidence
is sufficient to support a finding of guilt under any one of the theories
submitted.[22]  Guilt of the offense of burglary can be
established circumstantially by the combined and cumulative force of all the
incriminating circumstances.[23]           

Hypothetically Correct Jury Charge

On appeal, we measure the legal and factual
sufficiency of the evidence by the elements of the offense as defined by a
hypothetically correct jury charge.[24]  Such a charge accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's
burden of proof or unnecessarily restrict the State's theories of liability,
and adequately describes the particular offense for which the defendant is
being tried.[25]               In this case, appellant was charged
with six counts of burglary.  A
hypothetically correct jury charge against which we measure the sufficiency of
the evidence would ask the jury if (1) appellant, (2) on or about the day of
each alleged offense, (2) intentionally or knowingly, (3) entered a building,
(4) not then open to the public, (5) without the owner=s effective consent, (7) and committed a felony or
theft.[26]   

Standard of Review

In a legal sufficiency review, an appellate court must
examine the evidence presented in the light most

favorable to the verdict and determine whether any
rational trier of fact could have found the essential 

elements of the offense present beyond a reasonable
doubt.[27]  In making this determination, a reviewing

court considers all the evidence admitted that will
sustain the conviction, including improperly admitted evidence.[28]  As fact finder, the jury is the exclusive
judge of the credibility of witnesses and the weight to be afforded to their
testimony.[29]  The jury is free to accept one version of the
facts, reject another, or reject all or any of a witness's testimony.[30]               

In a factual sufficiency review, the appellate court
views all the evidence in a neutral light and determines whether evidence
supporting the verdict is too weak to support the finding of guilt beyond a
reasonable doubt or if evidence contrary to the verdict is strong enough that
the beyond‑a‑reasonable‑doubt standard could not have been
met.[31]  A clearly wrong and unjust verdict occurs
where the jury's finding is "manifestly unjust," "shocks the
conscience," or "clearly demonstrates bias."[32]  In conducting a factual sufficiency review,
we review all the evidence.[33]  We approach a factual sufficiency review with
appropriate deference to avoid substituting our judgment for that of the fact
finder.[34]  Every fact need not point directly and
independently to the accused's guilt.[35]  A conclusion of guilt can rest on the
combined and cumulative force of all the incriminating circumstances.[36]
 

Identity








Regarding identity, appellant argues that the State
presented insufficient evidence to establish the identity element of each
burglary.

Generally, fingerprint evidence alone will be
sufficient to sustain a conviction if the evidence shows that the print was
necessarily made at the time of the burglary.[37]  Fingerprint evidence will be sufficient if
the possibility that the defendant's fingerprints were left in a manner
consistent with innocence is highly unlikely.[38]

Police recovered fingerprints at the crime scenes of
two businesses, Elia=s Café and Milan=s
Shop.  Officer Vallejo testified that
prints from Elia=s Café were recovered from the inside and outside of
a window and from fragments of an adjoining broken window. He  further testified that at Milan=s Shop, prints were recovered from the upper-frame
of a broken window located above a door to the shop.  A fingerprint expert testified that the
prints lifted from both businesses positively matched appellant=s fingerprints. 
Several footprints were also discovered at the crime scenes of three
other businesses, Worth Finance, Mare=s Jewelry Shop, and Yerberia Reynosa.  Officer Vallejo testified that the footprints
were discovered inside a broken safe at Worth Finance.  He also stated that footprints were left in
mud in an alleyway behind Mare=s Jewelry Shop and Yerberia Reynosa.  According to Officer Vallejo, the recovered
footprints appeared to match the sole pattern of a pair of shoes owned by
appellant.  The State, without any
objection by appellant=s trial counsel, introduced evidence of the
fingerprints, photographs of the footprints, and photographs of appellant=s shoe pattern at trial.  








Viewed in the light most favorable to the verdict, because
appellant=s fingerprints were recovered from specific points
of entry at two crime scenes, and because evidence shows that the sole of
appellant=s shoe positively matched footprints left at three
additional crime scenes, we conclude the evidence is legally sufficient to
prove beyond a reasonable doubt that the fingerprints and footprints were
necessarily made by appellant at the time of the burglaries.[39]  Viewing the evidence as a whole in a neutral
light, we further conclude that the jury, as the sole judge of the witnesses= credibility and weight to be given to their
testimony, could have resolved, from the circumstantial evidence presented, the
issue of identity beyond a reasonable doubt.[40]

Entry

Appellant contends the State presented insufficient
evidence to establish the element of entry regarding each burglary.

Direct evidence of entry is not required.[41]  Entry may be established by inference, just
as inferences may, and often must be used to prove the elements of an offense.[42]  The State may prove entry through
circumstantial evidence.[43]








The point and method of entry at each business was
substantially similar.  Initial access to
the businesses was gained through a weak point in the buildings, such as a window
or weak wall, alarm systems were defeated, and telephone lines were cut.  As previously mentioned, appellant=s fingerprints were recovered from points of entry
at two crime scenes and evidence was presented to show that appellant=s footprints matched those left at three of the
crime scenes.  

Viewed in the light most favorable to the verdict,
because the burglaries were committed in a substantially similar manner,
appellant=s fingerprints were found at two crime scenes, and
because evidence was presented showing that appellant=s footprints matched those left at three of the
crime scenes, we conclude a rational trier of fact could have found beyond a
reasonable doubt the essential element of entry.[44]  Viewing the evidence as a whole in a neutral
light, we further conclude that the circumstantial evidence of the entry is not
so obviously weak as to undermine confidence in the jury's determination,[45]
nor do we find that the proof is greatly outweighed by contrary proof.[46]

Intent


Appellant contends the evidence is insufficient to
establish the intent element of each burglary.

Intent, as an essential element of the offense of
burglary, must be proved by the State beyond a reasonable doubt, and cannot be
left simply to speculation and surmise.[47]
Because intent is a fact question for the jury, it may be inferred from the
surrounding circumstances.[48]








Representatives from each business testified that
during non-business hours and without consent, a person forcefully entered
their businesses and committed a burglary. 
Testimony from the representatives showed that several items were taken
from each store, including a pistol, jewelry, food, clothing, $10,000 in
merchandise, and approximately $6,000. 
Amado Martinez, an acquaintance of appellant, testified that appellant
sold several pieces of jewelry to him. 
He further testified that he turned the jewelry over to police, when
they visited him subsequent to the burglaries. 
The owner of Mare=s Jewelry Shop testified that the value of the
jewelry stolen from her shop was about $10,000. 
Officer Vallejo testified that during his investigation of the
burglaries, he observed several cuts and abrasions on appellant, consistent
with injuries a burglar would have sustained while illegally entering a
building.  The State introduced photos of
appellant=s shoes, footprints recovered from the inside of the
safe at Worth Finance, and footprints recovered from the alleyway behind Mare=s Jewelry Shop and Yerberia Reynosa.  Officer Vallejo testified that the sole of
appellant=s shoe appeared to match the footprints recovered
from the crime scenes. 

Viewed in the light most favorable to the verdict,
based on the circumstantial evidence presented concerning the circumstances of
each burglary, the jury could have rationally inferred beyond a reasonable
doubt appellant=s intent to commit each burglary.[49]  Viewing the evidence in a neutral light, we
conclude the jury could have resolved any conflicts in the evidence and that
the evidence is not so obviously weak so as to undermine confidence in the jury=s determination.[50]








After reviewing all of the evidence under the
appropriate standards of review, we conclude that the evidence is legally and
factually sufficient to support appellant's convictions for burglary of a
building.[51]  Accordingly, appellant=s second issue is overruled.

Motion to Reopen Evidence

In appellant=s third issue, he contends that at the punishment
phase of the proceeding, the State failed to comply with article 36.01 of the
code of criminal procedure.  In support
of his contention, appellant argues that at the beginning of the punishment
hearing, (1) the State failed to read two enhancement counts to the jury, (2)
appellant=s plea to the enhancements was not taken, and (3)
the State failed to reintroduce evidence in support of the enhancements.[52]


Relevant Facts








At the punishment phase of trial, after all evidence
had been presented and both sides had rested, prior to the court=s reading of the charge to the jury regarding the
enhancements, the State requested that the court reopen evidence for purposes
of reading the two enhancement counts and for appellant to enter a plea on the
enhancements.  Appellant=s trial counsel objected and argued that the
enhancements should have been read and appellant=s plea
should have been entered at the beginning of the punishment phase of trial, and
that the State=s motion should be denied.  The court overruled appellant=s objection and granted the State=s motion for the sole purposes of reading the
enhancement paragraphs and for appellant to enter a plea to the
enhancements.  Immediately after the
court=s ruling, the enhancement counts were read and
appellant entered his plea of Anot true.@  Moments
later, before the court's jury charge on punishment was read, appellant=s trial counsel re-urged his objection and requested
that the court dismiss the two enhancement counts.  The court denied trial counsel=s motion. 
After the enhancements were read and appellant entered his plea, the
record shows that the State failed to re-introduce evidence.  

Applicable Law

Under article 36.01 of the code of criminal
procedure, the reading of the enhancement paragraphs at the penalty stage in a
bifurcated trial and the entering of a plea thereto are mandatory.[53]  The purpose of this rule is to inform the
accused of the charges against him and to inform the jury of the precise terms
of the particular charge against the accused.[54]  Without reading the enhancement allegations
and the defendant's plea to them, no issue is joined to enhance punishment, and
neither the jury nor the defendant is informed of the precise terms of the
charge.[55]  After the enhancements and plea are read to
the jury, the State is required to introduce evidence in support of the
enhancements.[56]  








In Turner v. State, the Texas Court of
Criminal Appeals held that because of the double jeopardy implications of
failure to comply with article 36.01, the potential for harm to a defendant's
right to a fair punishment hearing, and the interest in preventing a waste of
judicial resources in future cases, it was not unreasonable, nor inconsistent
with the purposes of the code, to require the State to strictly comply with
the applicable portion of article 36.01.[57]  In reaching its holding, the court concluded
that a Abright line rule@ was
appropriate because, inter alia, the State was solely responsible for
the error.[58]  The court also confirmed the proper procedure
the State should follow to cure error, stating, in relevant part, Awhen an error is discovered, the State can cure it
by reading the enhancement paragraph, having the defendant plead to it, and
reintroducing the evidence.@[59]  Finally, the
court determined that a harmless error analysis was inapplicable because
article 36.01 was a mandatory statutory provision.[60]


Nevertheless, since Turner, the court of
criminal appeals has held that all errors, with the exception of certain
federal constitutional errors labeled as "structural," are subject to
a harmless error analysis.[61]  However, article 36.01 violations are not
among the structural errors contemplated by the United States Supreme Court.[62]  Although Turner has not been expressly
overruled, in light of opinions issued by the court of criminal appeals
subsequent to Turner, we conclude that article 36.01 violations are now
subject to a harmless error analysis.[63]  Accordingly, we must conduct a harm analysis
to determine whether the error calls for a reversal of appellant=s sentencing under the enhancements.








Because the error is statutory, the proper harm
analysis is that for reviewing non‑constitutional error.[64]  When reviewing error under rule 44.2(b), we
only determine whether the error affected the defendant's substantial rights.[65]  ATo determine whether an error 'affected substantial
rights,' we consider whether a party had a right to that which the error
denied." [66]  In other words, after examining the record as
a whole, the appellate court must disregard the error if it has fair assurance
that the error did not influence the jury or had but a slight effect.[67]

The primary concern in Turner was the
potential for harm to a defendant=s right to a fair punishment hearing.[68]  As a result, the Court mandated strict
compliance with article 36.01 to protect a defendant=s right to a fair and impartial punishment hearing
in all future proceedings.[69]









Here, neither the enhancements nor appellant=s plea were read at the beginning of the punishment
hearing.  Despite these omissions, the
State presented evidence in support of an enhanced punishment.  Thus, at the time evidence was presented, no
issue had been joined.[70]  During this time, neither appellant nor the
jury was informed of the precise terms of the particular charge regarding the
enhancements.[71]  The purpose of strict compliance with the
applicable portion of article 36.01 is to guarantee against the potential for
harm arising from this type of error.[72]  Although the State requested that the
enhancements and plea be read after both sides rested, it failed to reintroduce
evidence to support the enhancements. 
Thus, after the enhancement counts were read and appellant entered a
plea, there was no evidence before the jury to consider in reaching its finding
of Atrue@ to the enhancements.[73]  Consequently, the State=s failure to reintroduce evidence violated article
36.01.[74]  We must now determine whether the error had a
substantial or injurious effect on the jury=s
verdict.   

As a preliminary matter, we recognize that other
appellate courts have considered the potential harm that arises from article
36.01 violations.[75]









In Linton, our sister court recognized that
article 36.01 requires that enhancements and a defendant=s plea be read in the jury=s presence at the beginning of the punishment
hearing.[76]  The court also determined that an article
36.01 violation was subject to a harm analysis.[77]  In conducting a harm analysis, the Linton court
considered the high court=s decision in Turner.[78]  The Linton court determined that the
primary concern in Turner was that a failure to read the enhancements
could mislead a defendant into believing the State had abandoned the
enhancements, which could potentially cause a defendant to take the stand and
incriminate himself.[79]  However, the Linton court determined
that because the defendant in that case did not take the stand, and evidence,
such as penitentiary packets supporting the defendant=s prior convictions, was admitted at the beginning
of the punishment hearing, self-incrimination had not occurred and the
defendant was not misled into believing that the State had abandoned the
enhancements.[80]  As a result, the Linton court held
that the apparent failure to read enhancements and the defendant=s plea at the beginning of the punishment hearing
was harmless error.[81]

Similarly, in Stegall, our sister court
concluded that a failure to read the enhancement paragraphs and a defendant=s plea at the beginning of the punishment hearing,
as required by article 36.01, was harmless.[82]  The court concluded the error was harmless
because evidence, such as penitentiary packets, was presented to support the
jury=s findings under the enhancements, and because the
defendant was not misled into believing that the State had abandoned the
enhancements.[83]  








However, in Marshall v. State,[84]
our sister court held that the State=s failure to introduce evidence subsequent to a
reading of the enhancements and the defendant=s
plea, as required by article 36.01, necessarily meant that there was no
evidence to support the jury=s finding of Atrue@ to the enhancements.[85]  Consequently, the court concluded that the
evidence was procedurally insufficient to support the jury=s finding of true to the enhancements.[86]  As a result, the Marshall court
reversed the defendant=s sentence under the enhancements and remanded the
case for a new punishment hearing.[87]  In reaching its holding, the Marshall
court recognized that article 36.01 violations generally are subject to a harm analysis,
but determined that conducting a harm analysis in that case was unnecessary
because it had already reversed the defendant=s
sentence on grounds of insufficient evidence.[88]  








In this case, we conclude the main purpose of
article 36.01, and the primary intent of the strict compliance requirement
established in Turner, is to guard against the potential for harm
created by deviation from article 36.01.[89]  Here, the State failed to read the
enhancements and appellant=s plea at the beginning of the punishment hearing
before evidence was introduced.  Once the
enhancements and plea were read, the State also failed to reintroduce evidence
in support of the enhancements or to get a stipulation as to the evidence
admitted prior to reading the enhancements and joining the plea.  This was harmful because it denied appellant
his right guaranteed by the compliance requirement established in Turner,
and because it improperly allowed appellant to be sentenced under the
enhancements even though evidence was not reintroduced subsequent to the
reading of the enhancements and appellant=s plea, which was necessary to support appellant=s enhanced sentencing.  We conclude that the deprivation of the right
established in Turner, and the sentencing of appellant under the
enhancements, despite the lack of any evidence, affected appellant=s substantial rights.[90]  Accordingly, we sustain appellant=s third issue, and reverse and remand this case to
the trial court for a new punishment hearing. 

It should be noted, however, that the State is not
prohibited from pursuing any enhancements at the new punishment hearing.[91]

Response to Dissent

We respectfully disagree with the dissent=s conclusion that appellant failed to preserve for
appellate review the State=s violation of article 36.01 of the code of criminal
procedure.  The record supports that
appellant=s trial counsel properly objected to the State=s motion to reopen evidence and to the extent
necessary, directed the court to the correct procedure required by article
36.01. 








Here, appellant=s trial counsel objected to the State=s motion to reopen evidence on the basis that it
improperly presented evidence to the jury before first reading the enhancement counts,
a requirement of article 36.01.[92]  Counsel also urged the court to proceed
toward punishment Awith what we have,@ which
provided the court with notice that the enhancement counts were unsupported by
any evidence.  However, the court
overruled counsel=s objection and granted the State=s motion solely for purposes of reading the
enhancement counts and appellant=s plea.  After
the enhancements and appellant=s plea were read, trial counsel requested a
dismissal of the enhancement counts because of the State=s failure to follow the correct procedure.  The court denied appellant=s request. 

The dissent, relying on Limon v. State,[93]
concludes that under the facts of this case, the defense objection failed to
direct the court to the correct procedure to be followed to cure the State=s failure to move for a reintroduction of the
evidence.  However, the facts in Limon
are distinguishable from this case.  

In Limon, during the rebuttal phase, the
trial court realized that the indictment and the defendant=s plea had not been read in the jury=s presence.[94]  As a result, the court permitted the State to
cure the error by reading the indictment and receiving the defendant=s plea.[95]  Following the reading of the indictment and
plea, defense counsel ultimately stated that he had Ano objection@ to the State re‑offering evidence.[96]  However, Limon argued on appeal, contrary to
the position taken at trial, that the State=s
reintroduction of the previously admitted evidence was invalid, and that the
State was required to re‑offer its evidence by recalling its witnesses
and re‑offering its previously admitted exhibits.[97]  This Court concluded that A[u]nder the circumstances of this case . . . in the
absence of an objection directing the court to the correct procedure, the error
was not preserved.@[98] 








In contrast, in this case appellant=s trial counsel never stipulated, or stated that he
had Ano objection,@ to the State=s motion to reopen evidence.  Counsel consistently voiced his opposition by
objecting, urging the court to proceed despite the State=s error, and requesting a dismissal of the
enhancements.  Similarly, on appeal  appellant maintains his position that the
State violated article 36.01.  Unlike Limon,
appellant=s strenuous objection to the State=s motion preserved his right to complain of the
State=s failure to move for a reintroduction of the
evidence on appeal.[99]  Moreover, we noted in Limon that in that
case, A[d]efense counsel did not ask that the evidence
heard before the plea be removed from the jury=s
consideration.  That objection would have
been sufficient to point out to the trial court the proper method to
reintroduce testimony.@[100]  In the
present case, appellant=s counsel advised the court to Ainstruct the jury not to consider the enhancement
counts and go forward with what we have.@  We conclude
that appellant=s request was Asufficient to point out to the trial court the
proper method to reintroduce the testimony.@[101]








Additionally, the dissent=s contention that appellant failed to preserve this
issue because his trial counsel Adid not direct the trial court to the correct
procedure . . . that the evidence . . . be reintroduced@ ignores the basic duty imposed on a lawyer in the
course of representing clients.  A
lawyer, as an advocate, is ethically required to zealously pursue a client=s interests within the bounds of the law.[102]  Although defense counsel=s objection informed the court of the lack of
evidence supporting the enhancements and the problem concerning the procedure,
the dissent contends, relying on Limon, that counsel was also required
to specifically direct the trial court to the correct procedure to be followed
regarding the reintroduction of the evidence. 
We conclude that to impose such a requirement would require appellant=s trial counsel to undermine his own client=s defense, thereby violating counsel=s ethical duty to his client.[103]  Despite this ethical dilemma, the dissent
would hold that by failing to inform the court regarding the specific necessity
for the State to reintroduce the evidence, counsel failed to preserve appellant=s right to challenge the State=s error on appeal.

It is generally true that the defense has the burden
of objecting and directing the court to the correct procedure to cure error
regarding article 36.01 violations.[104]  Here, however, counsel=s request that the trial court proceed Awith what we have@ and
instruct the jury not to consider the enhancement counts was sufficient to
alert the trial court to the proper method for reintroducing the evidence.[105]  Requiring defense counsel to go beyond such
notice by affirmatively and explicitly directing the court as to how the State=s error may be cured improperly shifts the State=s burden to introduce evidence in support of its
enhancement allegations to the defense. 
We decline to impose this burden on the defense.

Under the facts and circumstances of this case, and
for the reasons stated above, we respectfully disagree with the dissent and
conclude that appellant properly objected, and to the extent necessary,
directed the trial court to the correct procedure required to cure the State=s error.

Conclusion








We overrule appellant=s
first and second issues and affirm his burglary convictions.  We sustain appellant=s third issue, reverse his sentence, and remand this
case to the trial court for a new punishment hearing.                        

 

_______________________

LINDA REYNA YAÑEZ

Justice

 

Dissenting opinion by Justice Rodriguez.

 

Publish. Tex.R.App.P.
47.2(b)                  

 

Opinion delivered and filed this

the 30th day of November, 2005.    

 

 











[1]  See Tex.
Pen. Code Ann. _ 30.02(a)(1), (3) (Vernon 2003).





[2]  See Tex.
R. App. P. 25.2(a)(2).  





[3] 
In appellant=s second and third issues, he challenges
the legal and factual sufficiency of the evidence.  For simplicity, we have consolidated his
second and third issues into one issue and address them in issue two.  





[4] 
See U.S. Const. Amend.
IV; Tex. Const. art. I, ' 9.





[5] 
See Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).





[6] 
See State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  





[7] 
See Maestas  v. State, 987
S.W.2d 59, 62-63 (Tex. Crim. App. 1999).





[8] 
See State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000)
(en banc). 





[9] 
See Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).





[10] 
See U.S. Const. Amend. IV;
Tex. Const. art. I, ' 9.





[11] 
See Tex. Code Crim. Proc.
Ann. art. 38.23 (Vernon 2005).  





[12] 
See Foster v. State, 101 S.W.3d 490, 495 (Tex. App.BHouston [1st Dist.] 2002, no pet.).






[13] 
See Spight v. State, 76 S.W.3d 761, 768 (Tex. App.BHouston [1st Dist.] 2002, no pet.).






[14] 
See Ross, 32 S.W.3d at 855-56; Maestas, 987 S.W.2d
at 62; Spight, 76 S.W.3d at 768; Foster, 101 S.W.3d at 495.





[15] 
See Ross, 32 S.W.3d at 855-56; Maestas, 987 S.W.2d
at 62; Spight, 76 S.W.3d at 768; Foster, 101 S.W.3d at 495.





[16] 
See Tex. Code Crim. Proc.
Ann. art. 38.23 (Vernon 2005); Ross, 32 S.W.3d at 855-56; Maestas,
987 S.W.2d at 62; Spight, 76 S.W.3d at 768; Foster, 101 S.W.3d
at 495.





[17] 
See Tex. Pen. Code Ann. _ 30.02(a)(1), (3) (Vernon 2003).





[18] 
See Tex. Pen. Code Ann. ' 30.02(a) (Vernon 2003); Espinoza
v. State, 955 S.W.2d 108, 111 (Tex. App.BWaco 1997, pet. ref'd) (citing DeVaughn v. State,
749 S.W.2d 62, 64-65 (Tex. Crim. App. 1988)). 






[19] 
See Tex. Pen. Code Ann. ' 30.02(a)(1), (2) (Vernon 2003);
Espinoza, 955 S.W.2d at 111.  





[20]  See Tex. Pen.
Code Ann. ' 30.02(a)(3) (Vernon 2003); Espinoza,
955 S.W.2d at 111.





[21] 
See Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App.
1991).





[22] 
See Kitchens, 823 S.W.2d at 258. 






[23] 
See Medrano v. State, 658 S.W.2d 787, 790 (Tex. App.BHouston 1983, pet. ref'd) (citing Phipps
v. State, 630 S.W.2d 942, 945 (Tex. Crim. App. 1982)). 





[24] 
See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 





[25] 
See id.





[26] 
See Tex. Pen. Code Ann. ' 30.02(a)(1), (3) (Vernon 2003).





[27] 
See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Young v. State, 14
S.W.3d 748, 753 (Tex. Crim. App. 2000). 





[28] 
See Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). 





[29] 
See Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). 





[30] 
See Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App.
1981).





[31] 
See Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (en
banc).  





[32] 
See Prible v. State, No. AP‑74, 487, 2005 Tex. Crim. App. LEXIS 110, at *16‑*17
(Tex. Crim. App. January 26, 2005) (designated for publication). 





[33]  See Cain v. State, 958 S.W.2d 404,
408 (Tex. Crim. App. 1997). 





[34] 
See Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc). 





[35] 
See Vanderbilt v. State, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). 





[36]  See id.





[37] 
See Villarreal v. State, 79 S.W.3d 806, 811 (Tex. App.BCorpus Christi 2002, pet. ref'd)
(citing Bowen v. State, 460 S.W.2d 421, 423 (Tex. Crim. App. 1970)). 





[38] 
See id.





[39] 
See Jackson, 443 U.S. at 319; Young, 14 S.W.3d at 753; Villarreal,
79 S.W.3d at 811. 





[40] 
See Johnson,
23 S.W.3d at 7; Cain, 958 S.W.2d at 408; Vanderbilt, 629 S.W.2d
at 716; Villarreal, 79 S.W.3d at 811.





[41] 
See Lopez v. State, 884 S.W.2d 918, 921 (Tex. App.BAustin 1994, pet. ref'd).  





[42] 
See id.





[43] 
See Gilbertson v. State, 563 S.W.2d 606, 608 (Tex. Crim. App.
[Panel Op.] 1978);  Draper v. State,
681 S.W.2d 175, 177 (Tex. App.BHouston [14th Dist.] 1984, pet. ref'd).





[44] 
See Jackson, 443 U.S. at 319; Young, 14 S.W.3d at
753; Gilbertson, 563 S.W.2d at 608; Draper, 681S.W.2d at 177.





[45] 
See Zuliani
v. State, 97 S.W.3d 589, 593‑95 (Tex. Crim. App. 2003); Gilbertson,
563 S.W.2d at 608; Draper, 681 S.W.2d at 177. 





[46] 
See Zuliani,
97 S.W.3d at 593‑95; Gilbertson, 563 S.W.2d at 608; Draper,
681 S.W.2d at 177. 





[47] 
See LaPoint v. State, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986);
Coleman v. State, 832 S.W.2d 409, 413 (Tex. App.BHouston [1st Dist.] 1992, pet.
ref'd). 





[48] 
LaPoint, 750 S.W.2d at 182. 





[49] 
See Jackson, 443 U.S. at 319; Young, 14 S.W.3d at
753; LaPoint, 750 S.W.2d at 182; Coleman, 832 S.W.2dat 413. 





[50] 
See Zuliani, 97 S.W.3d at 593‑95; LaPoint, 750
S.W.2d at 182. 





[51]  See Tex.
Pen. Code Ann. ' 30.02(a)(1), (3) (Vernon 2003); Zuliani,
97 S.W.3d at 593‑95; Jackson, 443 U.S. at 319; Young, 14
S.W.3d at 753; Kitchens, 823 S.W.2d at 258. 





[52] 
See Tex. Code Crim. Proc. Ann. art.
36.01(a) (Vernon Supp. 2004-05).





[53] 
See Tex. Code Crim. Proc. Ann. art. 36.01(a)(1) (Vernon Supp.
2004‑05).





[54] 
See id.;
Turner v. State, 897 S.W.2d 786, 788 (Tex. Crim. App. 1995) (citing Warren
v. State, 693 S.W.2d 414, 415 (Tex. Crim. App. 1985)).





[55] 
See Turner, 897 S.W.2d at 788; Ex parte Sewell, 742 S.W.2d
393, 395 (Tex. Crim. App. 1987).





[56] 
See Tex. Code Crim. Proc.
Ann. art. 36.01(a)(1) (Vernon Supp. 2004‑05).





[57] 
See Turner, 897 S.W.2d at 789 (emphasis added).





[58] 
See id.





[59] 
See id.





[60] 
See id.  





[61] 
See High v. State, 964 S.W.2d 637, 638 (Tex. Crim. App. 1998); Cain
v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).  





[62] 
See Linton v. State, 15 S.W.3d 615, 620 (Tex. App.BHouston [14th Dist.] 2000, pet. ref=d) (citing Arizona v. Fulminante,
499 U.S. 279, 309-10 (1991)) (AStructural errors@ include the total deprivation of the right to counsel at
trial, a judge who was not impartial, unlawful exclusion of members of the
defendant's race from a grand jury, the right to self‑representation at
trial, and the right to public trial).





[63] 
See Tex. Code Crim. Proc.
Ann. art. 36.01(a) (Vernon Supp. 2004-05); Tex. R. App. P. 44.2; High, 964 S.W.2d at 638; Cain,
947 S.W.2d at 264.





[64] 
See Tex. R. App. P. 44.2(b);
Aguirre‑Mata v. State, 992 S.W.2d 495, 498 (Tex. Crim. App. 1999).






[65] 
See Tex. R. App. P. 44.2(b); Llamas v. State, 12 S.W.3d 469, 471 (Tex.
Crim. App. 2000); Aguirre‑Mata, 992 S.W.2d at 498. 





[66] 
See Johnson v. State, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002). 





[67] 
See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).





[68] 
See Turner, 897 S.W.2d at 788-89.





[69] 
See id. at
789.





[70] 
See id.; Ex parte Sewell, 742 S.W.2d at 395.





[71] 
See Tex. Code Crim. Proc.
Ann. art. 36.01(a) (Vernon Supp. 2004-05); Turner, 897 S.W.2d at
788-89; Ex parte Sewell, 742 S.W.2d at 395.





[72] 
See Tex. Code Crim. Proc. Ann.
art. 36.01(a) (Vernon Supp. 2004-05); Turner, 897 S.W.2d at
788-89; Ex parte Sewell, 742 S.W.2d at 395.





[73] 
See Tex. Code Crim. Proc.
Ann. art. 36.01(a) (Vernon Supp. 2004-05); Turner, 897 S.W.2d at
788-89; Ex parte Sewell, 742 S.W.2d at 395.





[74] 
See Tex. Code Crim. Proc.
Ann. art. 36.01(a) (Vernon Supp. 2004-05).





[75] 
See, e.g., Marshall v. State, 2004 Tex. App. LEXIS 10718, *13-14 (Tex. App.BTexarkana 2004, pet. ref=d) (not designated for
publication); but see Linton, 15 S.W.3d at 620 and Stegall v. State,
2005 Tex. App. LEXIS 4206, *9-11 (Tex. App.BDallas 2005, no pet. h.) (not designated for
publication).  





[76] 
See Linton, 15 S.W.3d at 620. 





[77] 
See id.





[78] 
See id. at
621.





[79] 
See id.





[80] 
See id.





[81] 
See id.





[82] 
See Stegall, 2005 Tex. App. LEXIS 4206, at *9-11.





[83] 
See id.





[84]  See Marshall, 2004 Tex. App. LEXIS
10718, at *13-14.





[85]  See id.





[86] 
See id.





[87] 
See id.





[88] 
See id.





[89] 
See Tex. Code Crim. Proc.
Ann. art. 36.01(a) (Vernon Supp. 2004-05); Turner, 897 S.W.2d at
788-89.





[90]  
See Tex. Code Crim. Proc.
Ann. art. 36.01(a) (Vernon Supp. 2004-05); Tex. R. App. P. 44.2(b); Johnson,
72 S.W.3d at 348; Turner, 897 S.W.2d at 788-89; Ex parte Sewell,
742 S.W.2d at 395.





[91] 
See Welch v. State, 645 S.W.2d 284, 285-86 (Tex. Crim. App.
1983).





[92] 
See Tex. Code Crim. Proc.
Ann. art. 36.01(a) (Vernon Supp. 2004-05) (requiring the indictment or
information be read to the jury by the attorney prosecuting prior to
introduction of evidence).





[93] 
See Limon v. State, 838 S.W.2d 767, 767 (Tex. AppBCorpus Christi 1992, pet. ref=d).





[94] 
See id. at
768.





[95] 
See id.          





[96] 
See id.





[97] 
See id.





[98] 
See id. at
769.





[99] 
See Tex. R. App. P. 33.1(a).





[100] 
See Limon, 838 S.W.2d at 769.





[101] 
See id.





[102] 
See Tex. Disc. R. Prof=l Conduct preamble1-3 (2004).





[103] 
See id.





[104] 
See Castillo v. State, 530 S.W.2d 952, 954 (Tex. Crim. App.
1976).





[105] 
See Limon, 838 S.W.2d at 769.