NUMBER 13-02-620-CR

 

                                 COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG  

 

 

HUGO HERNANDEZ,                                                   Appellant,

 

                                                v.

 

THE STATE OF TEXAS,                                                       Appellee.

 

On appeal from the 107th District
Court of Cameron County, Texas.

 

O P I N I O N

 

                       Before
Justices Yañez, Rodriguez, and Garza

                                        Opinion
by Justice Yañez

 

On November 30, 2005, a panel of this Court issued
an opinion in this case.[1]  We sua sponte withdraw our November
30, 2005 opinion and substitute this opinion in its place.








On January 1, 2002, appellant, Hugo Hernandez, was
indicted on six counts of burglary of a building.[2]  After a jury trial, he was convicted on
counts one, three, four, five, and six. 
Enhanced by two prior burglary convictions, the jury assessed his
punishment at ten years= imprisonment for each conviction, to be served
concurrently.  The record contains the
trial court=s certification that this is not a plea-bargain case
and the defendant has the right of appeal.[3]

In three issues, appellant contends (1)  the trial court erred in denying his motion
to suppress, (2) the evidence is legally and factually insufficient to support
his convictions for burglary,[4]
and (3) the trial court improperly allowed the State to reopen evidence during
the punishment phase of trial.  We affirm
in part and reverse and remand in part.

 Factual
Background








After burglaries of several small businesses in
Cameron County in mid-to-late 2001, the Brownsville Police Department initiated
an investigation.  After investigation of
several crime scenes, police suspected that the burglaries may have been
committed by the same individual.  During
their investigation, police received a tip from a crime-stopper=s hotline that appellant may have been involved in
the burglaries.  On April 18, 2001,
police arrested appellant for violation of Aseveral
traffic laws.@  During
appellant=s processing at the police department for the
traffic violations, without reading appellant his rights, police informed him
of the tip they had received, and asked appellant whether he would allow them
to photograph him.  After appellant
allegedly agreed, police took several photographs of him, and released him
shortly thereafter.  After more
burglaries occurred, police decided to visit appellant again on September 21,
2001, while he was at a friend=s residence. 
During their visit, police approached appellant as he entered the front
door of the residence and asked him whether he would allow them to take
additional photographs of him.  Appellant
allegedly consented and police took several more photographs.  After further investigation, police
determined that appellant had committed the burglaries and arrested him shortly
thereafter.

Motion to Suppress

In appellant=s first issue, he contends the trial court
improperly denied his motion to suppress the photographs because they were
obtained as a result of an illegal search and seizure in violation of the
United States and Texas Constitutions.[5]


Standard of Review








  The
appropriate standard for reviewing a trial court's ruling on a motion to
suppress is a bifurcated standard of review, giving almost total deference to
the trial court's determination of historical facts and reviewing de novo the
trial court's application of the law.[6]  The trial court is the sole trier of fact and
judge of the weight and credibility of the evidence.[7]  We must afford almost total deference to the
trial court's determination of historical facts supported by the record and its
rulings on application of law to fact questions, or "mixed" questions
of law, when those fact findings involve an evaluation of the credibility and
demeanor of witnesses.[8]  When, as here, the trial court does not make
explicit findings of fact, we view the evidence in the light most favorable to
the trial court's ruling and assume the trial court made implicit findings of
fact that support its ruling so long as those findings are supported by the
record.[9]  If the decision is correct under any theory
of law applicable to the case, the ruling will be sustained.[10]

Applicable Law

The Fourth Amendment of the United States
Constitution and Article I, section 9 of the Texas Constitution forbid
unreasonable searches and seizures.[11]  Article 38.23 of the Texas Code of Criminal
Procedure prohibits the admission of evidence obtained in violation of state or
federal laws or constitutions against an accused at the trial of any criminal
case.[12]  However, constitutional prohibitions against
warrantless searches and seizures do not come into play when a person gives
free and voluntary consent to a search.[13]  Voluntary consent to a warrantless search
violates neither the United States or Texas Constitutions, nor the laws of
Texas.[14]        

Relevant Facts








Immediately prior to trial, appellant=s trial counsel agreed that a previously-filed  motion to suppress concerning the photographs
would be carried through to trial.  At
trial, during direct examination of Officer Jesus Vallejo, who participated in
the investigation of the burglaries, the State requested that the trial court
admit into evidence the photographs of appellant taken on both occasions to
support its theory that appellant had committed the burglaries.  

The photographs show appellant in various
poses.  Some show appellant wearing a shirt,
and others show appellant=s arms, hands, and shirtless upper-body.  The photos are substantially similar in that
they show several abrasions, cuts, and scratches on appellant=s limbs and upper-body.  The State sought to show that appellant=s upper body had numerous abrasions, cuts, and
scratches, consistent with injuries a burglar would have sustained climbing
over walls and crawling through broken windows and holes in walls.  

When the State requested admission of the
photographs, appellant=s trial counsel moved to suppress them and objected
to their admission.  After a voir dire
examination of Officer Vallejo, who admitted to participation in the
photography sessions, trial counsel argued that the photographs should be
suppressed because police knew appellant was the main suspect in the burglary
investigation and chose to Aviolate his rights@ by
photographing him.  The court, without
stating its reasons, overruled trial counsel=s
suppression motion and objection, and admitted all the photographs into
evidence. 

Analysis








Officer Vallejo=s uncontroverted testimony was that on both
occasions, police asked for appellant=s consent to be photographed.  He further testified that appellant
voluntarily consented to the police requests on both occasions.  After hearing Officer Vallejo=s testimony, the trial court could have determined
appellant voluntarily consented to the police requests and that his
constitutional rights were not violated.[15]  Based on Officer Vallejo=s uncontroverted testimony[16]
and in deference to the trial court=s ruling, we conclude the trial court=s admission of the photographs was proper.[17]  Accordingly, appellant=s first issue is overruled.

Sufficiency of the Evidence

In his second issue, appellant challenges the legal
and factual sufficiency of the elements of identity, entry, and intent,
regarding his burglary convictions.[18]  We address these challenges in turn.

Applicable Law








Section 30.02 of the Texas Penal Code lists three
"distinct ways" a burglary may be committed.[19]  If a defendant is charged with burglary under
subsections (a)(1) or (a)(2), the State is required to prove the defendant's
intent to commit a felony or theft at the time the defendant entered or
remained concealed in a habitation or building.[20]  However, when a defendant is charged under
subsection (a)(3), the State is not required to prove that the defendant
intended to commit the felony or theft at the time of entry.[21]  Alternate pleading of the differing methods
of committing one offense may be charged in one indictment.[22]  The conviction will be upheld if the evidence
is sufficient to support a finding of guilt under any one of the theories
submitted.[23]  Guilt of the offense of burglary can be
established circumstantially by the combined and cumulative force of all the
incriminating circumstances.[24]           

Hypothetically Correct Jury Charge

On appeal, we measure the legal and factual
sufficiency of the evidence by the elements of the offense as defined by a
hypothetically correct jury charge.[25]  Such a charge accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's
burden of proof or unnecessarily restrict the State's theories of liability,
and adequately describes the particular offense for which the defendant is
being tried.[26]               In this case, appellant was
charged with six counts of burglary.  A
hypothetically correct jury charge against which we measure the sufficiency of
the evidence would ask the jury if (1) appellant, (2) on or about the day of
each alleged offense, (2) intentionally or knowingly, (3) entered a building,
(4) not then open to the public, (5) without the owner=s effective consent, (7) and committed a felony or
theft.[27]   

Standard of Review

            In
a legal sufficiency review, an appellate court must examine the evidence presented
in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the offense present
beyond a reasonable doubt.[28]  In making this determination, a reviewing
court considers all the evidence admitted that will sustain the conviction,
including improperly admitted evidence.[29]  As fact finder, the jury is the exclusive
judge of the credibility of witnesses and the weight to be afforded to their
testimony.[30]  The jury is free to accept one version of the
facts, reject another, or reject all or any of a witness's testimony.[31]        

In a factual sufficiency review, the appellate court
views all the evidence in a neutral light and determines whether evidence
supporting the verdict is too weak to support the finding of guilt beyond a
reasonable doubt or if evidence contrary to the verdict is strong enough that
the beyond‑a‑reasonable‑doubt standard could not have been
met.[32]  A clearly wrong and unjust verdict occurs
where the jury's finding is "manifestly unjust," "shocks the
conscience," or "clearly demonstrates bias."[33]  In conducting a factual sufficiency review,
we review all the evidence.[34]  We approach a factual sufficiency review with
appropriate deference to avoid substituting our judgment for that of the fact
finder.[35]  Every fact need not point directly and
independently to the accused's guilt.[36]  A conclusion of guilt can rest on the combined
and cumulative force of all the incriminating circumstances.[37]
 

 








Identity

Regarding identity, appellant argues that the State
presented insufficient evidence to establish the identity element of each
burglary.

Generally, fingerprint evidence alone will be
sufficient to sustain a conviction if the evidence shows that the print was
necessarily made at the time of the burglary.[38]  Fingerprint evidence will be sufficient if
the possibility that the defendant's fingerprints were left in a manner
consistent with innocence is highly unlikely.[39]

Police recovered fingerprints at the crime scenes of
two businesses, Elia=s Café and Milan=s Shop.  Officer Vallejo testified that prints from
Elia=s Café were recovered from the inside and outside of
a window and from fragments of an adjoining broken window. He  further testified that at Milan=s Shop, prints were recovered from the upper-frame
of a broken window located above a door to the shop.  A fingerprint expert testified that the
prints lifted from both businesses positively matched appellant=s fingerprints. 
Several footprints were also discovered at the crime scenes of three
other businesses, Worth Finance, Mare=s Jewelry Shop, and Yerberia Reynosa.  Officer Vallejo testified that the footprints
were discovered inside a broken safe at Worth Finance.  He also stated that footprints were left in
mud in an alleyway behind Mare=s Jewelry Shop and Yerberia Reynosa.  According to Officer Vallejo, the recovered footprints
appeared to match the sole pattern of a pair of shoes owned by appellant.  The State, without any objection by appellant=s trial counsel, introduced evidence of the
fingerprints, photographs of the footprints, and photographs of appellant=s shoe pattern at trial.  








Viewed in the light most favorable to the verdict,
because appellant=s fingerprints were recovered from specific points
of entry at two crime scenes, and because evidence shows that the sole of
appellant=s shoe positively matched footprints left at three
additional crime scenes, we conclude the evidence is legally sufficient to
prove beyond a reasonable doubt that the fingerprints and footprints were
necessarily made by appellant at the time of the burglaries.[40]  Viewing the evidence as a whole in a neutral
light, we further conclude that the jury, as the sole judge of the witnesses= credibility and weight to be given to their
testimony, could have resolved, from the circumstantial evidence presented, the
issue of identity beyond a reasonable doubt.[41]

Entry

Appellant contends the State presented insufficient
evidence to establish the element of entry regarding each burglary.

Direct evidence of entry is not required.[42]  Entry may be established by inference, just
as inferences may, and often must be used to prove the elements of an offense.[43]  The State may prove entry through
circumstantial evidence.[44]








The point and method of entry at each business was
substantially similar.  Initial access to
the businesses was gained through a weak point in the buildings, such as a
window or weak wall, alarm systems were defeated, and telephone lines were cut.  As previously mentioned, appellant=s fingerprints were recovered from points of entry
at two crime scenes and evidence was presented to show that appellant=s footprints matched those left at three of the
crime scenes.  

Viewed in the light most favorable to the verdict,
because the burglaries were committed in a substantially similar manner,
appellant=s fingerprints were found at two crime scenes, and
because evidence was presented showing that appellant=s footprints matched those left at three of the
crime scenes, we conclude a rational trier of fact could have found beyond a
reasonable doubt the essential element of entry.[45]  Viewing the evidence as a whole in a neutral
light, we further conclude that the circumstantial evidence of the entry is not
so obviously weak as to undermine confidence in the jury's determination,[46]
nor do we find that the proof is greatly outweighed by contrary proof.[47]

Intent


Appellant contends the evidence is insufficient to
establish the intent element of each burglary.

Intent, as an essential element of the offense of
burglary, must be proved by the State beyond a reasonable doubt, and cannot be
left simply to speculation and surmise.[48]
Because intent is a fact question for the jury, it may be inferred from the
surrounding circumstances.[49]








Representatives from each business testified that
during non-business hours and without consent, a person forcefully entered
their businesses and committed a burglary. 
Testimony from the representatives showed that several items were taken
from each store, including a pistol, jewelry, food, clothing, $10,000 in
merchandise, and approximately $6,000. 
Amado Martinez, an acquaintance of appellant, testified that appellant
sold several pieces of jewelry to him. 
He further testified that he turned the jewelry over to police, when
they visited him subsequent to the burglaries. 
The owner of Mare=s Jewelry Shop testified that the value of the
jewelry stolen from her shop was about $10,000. 
Officer Vallejo testified that during his investigation of the
burglaries, he observed several cuts and abrasions on appellant, consistent
with injuries a burglar would have sustained while illegally entering a
building.  The State introduced photos of
appellant=s shoes, footprints recovered from the inside of the
safe at Worth Finance, and footprints recovered from the alleyway behind Mare=s Jewelry Shop and Yerberia Reynosa.  Officer Vallejo testified that the sole of
appellant=s shoe appeared to match the footprints recovered
from the crime scenes. 

Viewed in the light most favorable to the verdict,
based on the circumstantial evidence presented concerning the circumstances of
each burglary, the jury could have rationally inferred beyond a reasonable
doubt appellant=s intent to commit each burglary.[50]  Viewing the evidence in a neutral light, we
conclude the jury could have resolved any conflicts in the evidence and that
the evidence is not so obviously weak so as to undermine confidence in the jury=s determination.[51]








After reviewing all of the evidence under the
appropriate standards of review, we conclude that the evidence is legally and
factually sufficient to support appellant's convictions for burglary of a
building.[52]  Accordingly, appellant=s second issue is overruled.

Motion to Reopen Evidence

In appellant=s third issue, he contends that at the punishment
phase of the proceeding, the State failed to comply with article 36.01 of the
code of criminal procedure.[53]  In support of his contention, appellant
argues that at the beginning of the punishment hearing, (1) the State failed to
read two enhancement counts to the jury, (2) appellant=s plea to the enhancements was not taken, and (3)
the State failed to reintroduce evidence in support of the enhancements.[54]


Relevant Facts








At the punishment phase of trial, after all evidence
had been presented and both sides had rested, the State requested that the
court reopen the evidence Aso that the defendant may be arraigned on the
enhancement counts.@  Appellant=s counsel objected and argued that Athe Court should then instruct the jury not to
consider the enhancement counts and go forward with what we have.@  Appellant=s counsel argued that the State failed to arraign
appellant on the enhancement counts at the beginning of the punishment phase
and was therefore Astuck with it.@  The court
overruled counsel=s objection and granted the State=s motion Afor the sole purpose of the enhancement counts and
the pleaing [sic] to the enhancement counts.@  Immediately thereafter, the enhancement
counts were read, appellant entered his plea of Anot
true,@ and the State closed.  Appellant=s
trial counsel then re-urged the court to Adismiss the enhancement counts because it was not
done properly.@  The trial
court denied counsel=s request. 
The court=s charge, which contained the enhancement allegations,
was then read to the jury and both sides proceeded with closing arguments. The
State did not re-introduce the evidence in support of the enhancement
allegations or stipulate to it by agreement with appellant after the
enhancement allegations were read and appellant entered his plea.  

Applicable Law

Under article 36.01 of the code of criminal
procedure, the reading of the enhancement paragraphs at the penalty stage in a
bifurcated trial and the entering of a plea thereto are mandatory.[55]  The purpose of this rule is to inform the
accused of the charges against him and to inform the jury of the precise terms
of the particular charge against the accused.[56]  Without reading the enhancement allegations
and the defendant's plea to them, no issue is joined to enhance punishment, and
neither the jury nor the defendant is informed of the precise terms of the charge.[57]  After the enhancements and plea are read to
the jury, the State is required to introduce evidence in support of the
enhancements.[58]  








In Turner v. State, the Texas Court of
Criminal Appeals held that because of the double jeopardy implications of
failure to comply with article 36.01, the potential for harm to a defendant's
right to a fair punishment hearing, and the interest in preventing a waste of
judicial resources in future cases, it was not unreasonable, nor inconsistent
with the purposes of the code, to require the State to Astrictly comply@ with the applicable portion of article 36.01.[59]  In reaching its holding, the court concluded
that a Abright line rule@ was
appropriate because, inter alia, the State was solely responsible for
the error.[60]  The court also confirmed the proper procedure
the State should follow to cure error in such circumstances:  Awhen an error like the one here is discovered[,] the
State can cure it by reading the enhancement paragraph, having the defendant
plead to it, and reintroducing the evidence.@[61]  Accordingly,
the court determined that a harm analysis was inapplicable to a violation of
article 36.01.[62]









Since Turner, however, the court of criminal
appeals has held that all errors, with the exception of certain federal
constitutional errors labeled as "structural," are subject to a harm
analysis.[63]  Article 36.01 violations are not among the
structural errors contemplated by the United States Supreme Court.[64]  Although the court of criminal appeals has
not expressly overruled Turner, we conclude its decisions since Turner
suggest that article 36.01 violations are subject to a harm analysis.[65]  Accordingly, we conclude that the error in
the present case is subject to a harm analysis.

Because the error is statutory, we apply the harm
analysis for non‑constitutional error.[66]  When reviewing error under rule 44.2(b), we
only determine whether the error affected the defendant's substantial rights.[67]  ATo determine whether an error 'affected substantial
rights,' we consider whether a party had a right to that which the error
denied."[68]  In other words, after examining the record as
a whole, the appellate court must disregard the error if it has fair assurance
that the error did not influence the jury or had but a slight effect.[69]

We note that several appellate courts have addressed
whether a harm analysis is applicable to an article 36.01 violation.








In Linton, the Fourteenth Court of Appeals
recognized that article 36.01 requires that enhancements and a defendant=s plea be read in the jury=s presence at the beginning of the punishment
hearing.[70]  The court also noted that although the court
of criminal appeals has not overturned Turner, its post-Turner
decisions suggest that an article 36.01 violation is subject to a harm
analysis.[71]  The court further concluded that because the
failure to read the enhancements and a defendant=s plea
to the jury is statutory error, the proper harm analysis is that for reviewing
non-constitutional error.[72]  The Linton court determined that the
court of criminal appeals=s Akey concern@ in Turner was that a failure to read the
enhancements and have a defendant plead to them could mislead the defendant
into believing the State had abandoned the enhancements, which could
potentially cause a defendant to take the stand and incriminate himself.[73]  However, the Linton court determined
that no self-incrimination occurred in that case because the defendant did not
take the stand, and evidence, such as penitentiary packets supporting the
defendant=s prior convictions, was admitted at the beginning
of the punishment hearing.[74]  In Linton, at the beginning of trial,
the defendant had pled Anot guilty@ to the primary offense and Anot true@ to the enhancement allegations.[75]  The record was silent, however, as to whether
the trial court read the enhancement paragraphs and the defendant=s plea of Anot true@ to the jury before the punishment hearing.[76]  The Linton court concluded that the
defendant was not misled into believing that the State had abandoned the
enhancement allegations and held that the Aapparent failure@ to
read the enhancement allegations and the defendant=s plea at the beginning of the punishment hearing
was harmless error.[77]








Similarly, in Stegall, the Dallas Court of
Appeals concluded that the failure to read 
enhancement paragraphs and a defendant=s plea
at the beginning of a punishment hearing, as required by article 36.01, is
statutory error subject to the harm analysis for non-constitutional error.[78]  As in Linton, the Stegall court
concluded that the Akey concern@ in Turner was that the defendant could be
misled into believing the State has abandoned the enhancement paragraphs and
take the stand and incriminate himself.[79]  The Stegall court concluded that
because the defendant did not take the stand at the punishment hearing, and
because evidence, such as penitentiary packets, fingerprints, and photographs
evidencing his prior convictions was admitted at the beginning of the
punishment hearing, he was not misled into believing that the State had
abandoned the enhancements and the Aapparent failure@ to
read the enhancement allegations and the defendant=s plea at the beginning of the punishment hearing
was harmless error.[80]  








In Marshall v. State, the Texarkana Court of
Appeals held that because the trial court failed to read the enhancement
paragraphs and take the defendant=s plea at the beginning of the punishment phase and
the State failed to re-introduce evidence supporting the enhancement
allegations following the defendant=s plea of Anot true,@ there was Aprocedurally@ Ano evidence@ to support the enhancement of the defendant=s sentence.[81]  The Texarkana Court therefore reversed the
defendant=s sentence and remanded the case for a new
punishment trial.[82]  The Texarkana Court also found that (1) the
jury charge regarding punishment enhancement was defective, (2) the failure to
read the enhancement paragraph or take the defendant=s plea at the beginning of the punishment phase of
trial was error, and (3) the defendant=s trial counsel made errors during the punishment
phase of trial.[83]  However, the Texarkana Court did not assess
harm on any of these errors.[84]  The Texarkana Court recognized that article
36.01 violations are subject to a harm analysis, but concluded that it was
unnecessary to determine whether the article 36.01 violation was harmful
because it had already determined that the defendant=s sentence must be reversed and the case remanded
for a new punishment hearing.[85]


The court of criminal appeals recently reversed the
Texarkana Court=s decision on grounds that it erred in failing to
conduct a harm analysis on the alleged jury charge error.[86]  The court of criminal appeals held that when
the jury charge was read, the appellant was required to object, because at that
point, it was clear that the State was seeking enhancement allegations that had
not been included in the indictment or read to the jury.[87]  The court of criminal appeals held that
because the defendant failed to object, he must show egregious harm before
relief may be granted.[88]  The court therefore remanded the case to the
Texarkana Court to perform a harm analysis on the alleged jury charge error
pursuant to Almanza.[89]









In discussing the State=s second ground for review,[90]
the court of criminal appeals noted that the Texarkana Court Avery specifically based its ruling on what it termed
>procedural sufficiency,= finding that, because the supporting evidence was
introduced before the reading of the prior conviction allegations and the
taking of appellants=s plea, >no issue was joined.=@[91]  The court of
criminal appeals noted, however, that Athis defect arose from a trial error, rather than a
true lack of evidence.@[92]  The court of
criminal appeals noted that in reaching its decision, the Texarkana Court
relied on Welch v. State, 645 S.W.2d 284, 285 (Tex. Crim. App. 1983).[93]  The court of criminal appeals pointed out,
however, that in Welch, the court Afound trial error, not insufficient evidence.@[94]

                                                          Analysis








Here, after all evidence had been presented and both
sides had rested, the State requested that the court reopen the evidence Aso that the defendant may be arraigned on the
enhancement counts.@  Appellant=s counsel objected, arguing that Athe Court should then instruct the jury not to
consider the enhancement counts and go forward with what we have.@  We conclude
that this objection was sufficient to point out to the trial court the proper
method to reintroduce the evidence to support the enhancement allegations.[95]  We hold that the trial court did not err in
granting the State=s request to re-open the evidence for the purposes
of reading the enhancement allegations paragraphs and entering appellant=s plea to the allegations.[96]   However, after the enhancement allegations
were read and appellant pled Anot true,@ the State again closed without either reintroducing
the evidence in support of the allegations or stipulating to it pursuant to an
agreement with appellant.  








Thereafter, appellant=s
counsel re-urged the court to Adismiss the enhancement counts because it was not
done properly.@  We hold that
counsel=s re-urging of his request  to dismiss the enhancement counts or instruct
the jury not to consider the enhancement allegations was also sufficient to
point out the proper method to reintroduce the testimony.[97]  Because the State failed to either
reintroduce the evidence supporting the enhancement allegations or stipulate to
the evidence pursuant to an agreement with appellant, the trial court erred
when it denied appellant=s request.[98]  The only testimony regarding the enhancement
allegations was presented before appellant=s plea; the testimony was not stipulated to or
reintroduced after appellant=s plea, and was therefore not properly before the
jury.[99]

We also hold that the trial court=s error in denying appellant=s request was harmful.[100]  The jury charge instructed the jurors that
with respect to each of the counts alleged in Counts I, III, IV, V, and VI of
the indictment, if the jurors found both enhancement allegations Atrue,@ the range of punishment for each count was not less
than two years or more than ten years, plus if the jurors chose to assess a
fine, it was not to exceed $10,000.  They
were further instructed that with respect to Counts I, III, IV, V, and VI of
the indictment, if they did not find both enhancement allegations Atrue,@ the range of punishment for each count was a state
jail felony for a period of not less than 180 days or more than two years, plus
if the jurors chose to assess a fine, it was not to exceed $10,000.  The jury found both enhancement allegations Atrue@ and assessed punishment at ten years= imprisonment on each count.  Accordingly, as in Welch and Dill,
we hold appellant was clearly harmed by the jury=s
consideration of evidence presented before the enhancement allegations were
read and appellant=s plea was taken.[101]  We further hold that as in Welch,
because we have found trial error, the State is not prohibited from pursuing
enhanced punishment again at a new punishment trial.[102]

We sustain appellant=s
third issue, and reverse and remand this case to the trial court for a new
punishment trial. 

 








Response to Dissent

The dissent agrees that the State erred by failing
to either reintroduce the evidence supporting the enhancement allegations or
stipulate to it after the allegations were read and appellant entered his
plea.  The dissent contends, however,
that appellant=s objection was insufficient to direct the trial
court to the correct procedure to be followed: 
that the evidence introduced before the plea must be reintroduced or
stipulated to by appellant.  Accordingly,
the dissent concludes that appellant did not preserve error.

In support of its argument, the dissent cites Dill
and notes that unlike the defendant in Dill, appellant did not ask
the court to instruct the jury to disregard evidence introduced before the
reading of the enhancement allegations and the taking of appellant=s plea.[103]  The dissent also cites Limon in
support of its argument that appellant=s objection was insufficient to preserve error.  In Limon, this Court stated that a
request that the evidence heard before the plea be removed from the jury=s consideration would have been sufficient to point
out to the trial court the proper method to reintroduce the testimony.[104]








We find Limon both factually distinguishable
and consistent with our holding in the present case.  In Limon, the trial court allowed the
State to re-open its case-in-chief so that the indictment could be read before
the jury.[105]  The defense counsel objected to the reading
of the indictment; the trial court denied the objection and asked defense
counsel if the State could re-offer the evidence it had already presented.[106]  Defense counsel stated he had Ano objection@ to the State re-offering evidence.[107]  The trial court then asked the State if it
was going to re-offer all its prior evidence; the State responded affirmatively
and the trial court granted the State=s request.[108]  On these facts, this Court noted that on
similar facts in Castillo v. State, 530 S.W.2d 952 (Tex. Crim. App.
1976), the court of criminal appeals had found (1) no re-introduction of
evidence or stipulation had occurred and (2) the defendant failed to preserve
error by not directing the trial court to the proper procedure.[109]  Relying on Castillo, this Court in Limon
held that the defendant=s objection was insufficient to preserve error.[110]  We noted in Limon, however, that a
request by  defense counsel that the jury
not consider evidence heard before the plea would have been sufficient to point
out to the trial court the proper method to reintroduce the testimony.[111]

We fail to see how appellant=s request in the present case (that the trial court
instruct the jury not to consider the enhancement allegations) differs
significantly from the defendant=s request in Dill (and endorsed as sufficient
in Limon) to instruct the jury not to consider evidence heard before the
defendant=s plea.  We
read the holdings in Dill and Limon as suggesting that appellant=s request that the jury not consider the enhancement
allegations was sufficient to apprise the trial court of the proper method to
reintroduce evidence.[112]   








We read Limon and Dill as requiring
only that a defendant must Adirect@ the trial court to the proper procedure for
reintroducing evidence.  Asking the trial
court to disregard evidence heard before a defendant=s plea is sufficient.[113]  Neither case suggests that a defendant must
expressly lead the trial court, step by step, through the proper
procedure.  We conclude that finding such
a requirement impermissibly shifts the State=s
burden to introduce evidence supporting the enhancement allegations to the
defense.  We do not endorse such a result
and do not read the authority cited by the dissent as requiring it. 

Conclusion

We overrule appellant=s
first and second issues and affirm his burglary convictions.  We sustain appellant=s third issue, reverse his sentence, and remand this
case to the trial court for a new punishment trial.             

 

_______________________

LINDA REYNA YAÑEZ,

Justice

 

Dissenting opinion by 

Justice Nelda Rodriguez

 

Publish. Tex.R.App.P.
47.2(b)                  

 

Opinion delivered and filed this

the 6th day of April, 2006.    

 

 











[1] Hernandez v. State, No.
13-02-620-CR, 2005 Tex. App. LEXIS 9878 (Tex. App.BCorpus Christi Nov. 30, 2005). 





[2]  See Tex.
Pen. Code Ann. _ 30.02(a)(1), (3) (Vernon 2003).





[3]  See Tex.
R. App. P. 25.2(a)(2).  





[4] 
In appellant=s second and third issues, he
challenges the legal and factual sufficiency of the evidence.  For simplicity, we have consolidated his
second and third issues into one issue and address them in issue two.  





[5] 
See U.S. Const. Amend.
IV; Tex. Const. art. I, ' 9.





[6] 
See Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).





[7] 
See State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  





[8] 
See Maestas  v. State, 987
S.W.2d 59, 62-63 (Tex. Crim. App. 1999).





[9] 
See State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000)
(en banc). 





[10] 
See Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).





[11] 
See U.S. Const. Amend. IV;
Tex. Const. art. I, ' 9.





[12] 
See Tex. Code Crim. Proc.
Ann. art. 38.23 (Vernon 2005).  





[13] 
See Foster v. State, 101 S.W.3d 490, 495 (Tex. App.BHouston [1st Dist.] 2002, no pet.).






[14] 
See Spight v. State, 76 S.W.3d 761, 768 (Tex. App.BHouston [1st Dist.] 2002, no pet.).






[15] 
See Ross, 32 S.W.3d at 855-56; Maestas, 987 S.W.2d
at 62; Spight, 76 S.W.3d at 768; Foster, 101 S.W.3d at 495.





[16] 
See Ross, 32 S.W.3d at 855-56; Maestas, 987 S.W.2d
at 62; Spight, 76 S.W.3d at 768; Foster, 101 S.W.3d at 495.





[17] 
See Tex. Code Crim. Proc.
Ann. art. 38.23 (Vernon 2005); Ross, 32 S.W.3d at 855-56; Maestas,
987 S.W.2d at 62; Spight, 76 S.W.3d at 768; Foster, 101
S.W.3d at 495.





[18] 
See Tex. Pen. Code Ann. _ 30.02(a)(1), (3) (Vernon 2003).





[19] 
See Tex. Pen. Code Ann. ' 30.02(a) (Vernon 2003); Espinoza
v. State, 955 S.W.2d 108, 111 (Tex. App.BWaco 1997, pet. ref'd) (citing DeVaughn v. State,
749 S.W.2d 62, 64-65 (Tex. Crim. App. 1988)). 






[20] 
See Tex. Pen. Code Ann. ' 30.02(a)(1), (2) (Vernon 2003);
Espinoza, 955 S.W.2d at 111.  





[21]  See Tex. Pen.
Code Ann. ' 30.02(a)(3) (Vernon 2003); Espinoza,
955 S.W.2d at 111.





[22] 
See Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App.
1991).





[23] 
See Kitchens, 823 S.W.2d at 258. 






[24] 
See Medrano v. State, 658 S.W.2d 787, 790 (Tex. App.BHouston 1983, pet. ref'd) (citing Phipps
v. State, 630 S.W.2d 942, 945 (Tex. Crim. App. 1982)). 





[25] 
See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 





[26] 
See id.





[27] 
See Tex. Pen. Code Ann. ' 30.02(a)(1), (3) (Vernon 2003).





[28] 
See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Young v. State, 14
S.W.3d 748, 753 (Tex. Crim. App. 2000). 





[29] 
See Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). 





[30] 
See Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). 





[31] 
See Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App.
1981).





[32] 
See Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (en
banc).  





[33] 
See Prible v. State, 175 S.W. 3d 724, 730-31 (Tex. Crim. App. 2005). 





[34]  See Cain v. State, 958 S.W.2d 404,
408 (Tex. Crim. App. 1997). 





[35] 
See Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc). 





[36] 
See Vanderbilt v. State, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). 





[37]  See id.





[38] 
See Villarreal v. State, 79 S.W.3d 806, 811 (Tex. App.BCorpus Christi 2002, pet. ref'd)
(citing Bowen v. State, 460 S.W.2d 421, 423 (Tex. Crim. App. 1970)). 





[39] 
See id.





[40] 
See Jackson, 443 U.S. at 319; Young, 14 S.W.3d at 753; Villarreal,
79 S.W.3d at 811. 





[41] 
See Johnson,
23 S.W.3d at 7; Cain, 958 S.W.2d at 408; Vanderbilt, 629 S.W.2d
at 716; Villarreal, 79 S.W.3d at 811.





[42] 
See Lopez v. State, 884 S.W.2d 918, 921 (Tex. App.BAustin 1994, pet. ref'd).  





[43] 
See id.





[44] 
See Gilbertson v. State, 563 S.W.2d 606, 608 (Tex. Crim. App.
[Panel Op.] 1978);  Draper v. State,
681 S.W.2d 175, 177 (Tex. App.BHouston [14th Dist.] 1984, pet. ref'd).





[45] 
See Jackson, 443 U.S. at 319; Young, 14 S.W.3d at
753; Gilbertson, 563 S.W.2d at 608; Draper, 681S.W.2d at 177.





[46] 
See Zuliani
v. State, 97 S.W.3d 589, 593‑95 (Tex. Crim. App. 2003); Gilbertson,
563 S.W.2d at 608; Draper, 681 S.W.2d at 177. 





[47] 
See Zuliani,
97 S.W.3d at 593‑95; Gilbertson, 563 S.W.2d at 608; Draper,
681 S.W.2d at 177. 





[48] 
See LaPoint v. State, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986);
Coleman v. State, 832 S.W.2d 409, 413 (Tex. App.BHouston [1st Dist.] 1992, pet.
ref'd). 





[49] 
LaPoint, 750 S.W.2d at 182. 





[50] 
See Jackson, 443 U.S. at 319; Young, 14 S.W.3d at
753; LaPoint, 750 S.W.2d at 182; Coleman, 832 S.W.2d at 413. 





[51] 
See Zuliani, 97 S.W.3d at 593‑95; LaPoint, 750
S.W.2d at 182. 





[52]  See Tex.
Pen. Code Ann. ' 30.02(a)(1), (3) (Vernon 2003); Zuliani,
97 S.W.3d at 593‑95; Jackson, 443 U.S. at 319; Young, 14
S.W.3d at 753; Kitchens, 823 S.W.2d at 258. 





[53] 
See Tex. Code Crim. Proc. Ann. art.
36.01(a) (Vernon Supp. 2004-05).





[54] 
See id.  





[55] 
See id.





[56] 
See id.;
Turner v. State, 897 S.W.2d 786, 788 (Tex. Crim. App. 1995) (citing Warren
v. State, 693 S.W.2d 414, 415 (Tex. Crim. App. 1985)).





[57] 
See Turner, 897 S.W.2d at 788; Ex parte Sewell, 742 S.W.2d
393, 395 (Tex. Crim. App. 1987).





[58] 
See Tex. Code Crim. Proc.
Ann. art. 36.01(a)(1) (Vernon Supp. 2004‑05).





[59] 
See Turner, 897 S.W.2d at 789.





[60] 
See id.





[61] 
See id. n.5.





[62] 
See id. at
789.  





[63] 
See High v. State, 964 S.W.2d 637, 638 (Tex. Crim. App. 1998); Cain
v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).  





[64] 
See Linton v. State, 15 S.W.3d 615, 620 (Tex. App.BHouston [14th Dist.] 2000, pet. ref=d) (citing Arizona v. Fulminante,
499 U.S. 279, 309-10 (1991)) (AStructural errors@ include the total deprivation of the right to counsel at
trial, a judge who was not impartial, unlawful exclusion of members of the
defendant's race from a grand jury, the right to self‑representation at
trial, and the right to public trial).





[65] 
See Tex. R. App. P. 44.2;
High, 964 S.W.2d at 638; Cain, 947 S.W.2d at 264.  The court of criminal appeals recently
declined to directly address whether Turner is Astill good law.@ 
See Marshall v. State, No. PD-2016-04, 2006 Tex. Crim. App. LEXIS
360 (Tex. Crim. App. Feb. 15, 2006).  In Marshall,
the State argued that its error in failing to read the enhancement allegations
and take appellant=s plea at the beginning of the
punishment phase was not preserved for appellate review because the appellant
had not objected.  Marshall, 2006
Tex. Crim. App. LEXIS 360 at *7 n.3.  The
court of criminal appeals held that the appellant was required to object Awhen the jury charge was read and
it became abundantly clear that the state was asking for enhancement far beyond
that specified in its notice to appellant.@  Id. at
*8.  The court further held that because
appellant failed to object to the alleged error in the jury charge, he must
show egregious harm before relief may be granted.  Id. at *10 (citing Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). 
The court therefore remanded the case to the court of appeals to perform
a harm analysis pursuant to Almanza. 
See id.  





[66] 
See Tex. R. App. P. 44.2(b);
Aguirre‑Mata v. State, 992 S.W.2d 495, 499 (Tex. Crim. App. 1999).






[67] 
See Tex. R. App. P. 44.2(b); Llamas v. State, 12 S.W.3d 469, 471 (Tex.
Crim. App. 2000); Aguirre‑Mata, 992 S.W.2d at 498. 





[68] 
See Johnson v. State, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002). 





[69] 
See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).





[70] See Linton, 15 S.W.3d at
620. 





[71] 
See id.





[72] See id.





[73] 
See id.





[74] 
See id. at 621.  





[75] 
See id. at 620. 





[76] 
See id.





[77] 
See id. at
621.  





[78]  Stegall v. State, No. 05-04-01283-CR, 2005
Tex. App. LEXIS 4206, *9 (Tex. App.BDallas 2005, no pet. h.). 






[79] 
Id. at *10.  





[80] 
See id. at *10-*11.





[81] 
Marshall v. State, 2004 Tex. App. LEXIS 10718, *13-*14 (Tex. App.BTexarkana Dec. 1, 2004), rev=d, No. PD-2016-04, 2006 Tex. Crim. App. LEXIS 360
(Tex. Crim. App. Feb. 16, 2006) (designated for publication).  





[82] 
See id. at
*14.





[83] 
Id. at *10.  





[84] 
Id.  





[85] 
Id. at *17.  





[86] 
Marshall, 2006 Tex. Crim. App. LEXIS 360 at *10.  The court of criminal appeals sustained the
State=s third ground for review, in which
the State argued that Athe Court of Appeals erred in
failing to address the issue of whether any error was harmless.@ 
Id. at *5 n.1.





[87] 
Id. at *10.





[88] 
Id. at *10.





[89] 
See Almanza, 686 S.W.2d at 171.





[90] 
In its second ground for review, the State asserted that the Texarkana
Court Aerred in failing to consider all
the evidence actually admitted at trial in its review of the sufficiency of the
evidence supporting the enhancement of the defendant=s sentence.@ 
The court of criminal appeals overruled the State=s second ground.  





[91] 
Marshall, 2006 Tex. Crim. App. LEXIS 360 at *6-*7 (emphasis in
original).





[92] 
Id. at *7.  





[93] 
Id.  





[94] 
Id. n.2.  





[95] 
See Limon v. State, 838 S.W.2d 767, 769 (Tex. App.BCorpus Christi 1992, pet. ref=d) 
(noting that an objection that the evidence heard before the plea  be removed from the jury=s consideration was sufficient to
point out to the trial court the proper method to reintroduce testimony); see
also Dill v. State, 697 S.W.2d 702, 709 (Tex. App.BCorpus Christi 1985, pet. ref=d) (holding that a request to
instruct the jury to disregard testimony introduced before the enhancement
allegations were read was sufficient to point out to the trial court the proper
method to reintroduce the testimony).  





[96] 
See Turner, 897 S.W.2d at 789 n.5; Welch, 645 S.W.2d at
285 (quoting Castillo v. State, 530 S.W.2d 952 (Tex. Crim. App. 1976)); Dill,
697 S.W.2d at 709 (noting trial court did not err in permitting the State=s tardy reading of the indictment).





[97] 
See Limon, 838 S.W.2d at 769; Dill, 697 S.W.2d at 709. 





[98] 
We note that immediately prior to the State closing at the punishment
phase (prior to the State=s motion to re-open), the State
requested that Aall the evidence in the guilt or
innocence phase be admitted during the sentencing phase.@ 
The trial court granted the request. 
We conclude, however, that the State=s request did not constitute a stipulation.  See Dill, 697 S.W.2d at 709.  In Dill, after the trial court allowed
the State to read the enhancement allegations (after the State had
presented all its evidence in support of the allegations), the assistant
district attorney stated that Athe State has presented its evidence, and I would just like
to inform the Court and the jury that the information that has been presented
in the proceedings and testimony from Mr. Fernandez be applied to this charge
that has just been read to the jury.@  The court held that
this statement was neither a reintroduction of the evidence nor a
stipulation.  See id.  Moreover, in the present case, the trial
court granted the State=s request to admit the evidence
during the sentencing phase before the enhancement allegations were read
and appellant=s plea was taken.  Accordingly, we conclude that the granting of
the State=s motion was neither a stipulation
nor a reintroduction of the evidence.    






[99] 
See Welch, 645 S.W.2d at 285. 






[100] 
See id. (holding jury=s consideration of evidence presented before the appellant=s plea, and not having been
stipulated or reintroduced, was clearly harmful to appellant); Dill, 697
S.W.2d at 709 (noting court=s error in not instructing the jury to disregard testimony
presented before enhancement allegations were read was Aobviously harmful to appellant as
this included all the testimony before the jury at the punishment stage.@)





[101] 
See Welch, 645 S.W.2d at 285; Dill, 697 S.W.2d at 709. 





[102] 
See Welch, 645 S.W.2d at 286.





[103] 
See Dill, 697 S.W.2d at 709.





[104] 
See Limon, 838 S.W.2d at 769. 






[105] 
Id. at 768.





[106] 
Id.  





[107] 
Id.  





[108] 
Id.  





[109] 
Id.  





[110] 
Id. at 769.





[111] 
Id.  





[112] 
See Dill, 697 S.W.2d at 709; Limon, 838 S.W.2d at 769.





[113] 
See Dill, 697 S.W.2d at 709; Limon, 838 S.W.2d at 769.